UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-51328 (AHWS) |
| TIFFANY M. KRITHARAKIS, | § | |
| | § | CHAPTER 13 |
| Debtor | § | |

**OBJECTION AND RESPONSE TO UNITED STATES TRUSTEE'S MOTION FOR
RULE 2004 EXAMINATION OF REPRESENTATIVE(S) OF DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE FOR SOUNDVIEW HOME LOAN
TRUST 2005-OPTI, ASSET BACKED CERTIFICATES, SERIES 2005-OPTI**

Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPTI, Asset Backed Certificates, Series 2005-OPTI ("Deutsche Bank Trustee") serves the following Objection and Response to United States Trustee's Motion for Rule 2004 Examination of Representative(s) of Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPTI, Asset Backed Certificates, Series 2005-OPTI (the "Motion") (Doc. 52) and respectfully shows the Court the following:

**I.
INTRODUCTION**

The United States Trustee ("UST") has failed to show "good cause" for an examination under Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"). Any examination by the UST in this matter is unauthorized by statute, burdensome, and unnecessary, particularly given the Debtor's active participation in the case. The Court should deny the Motion and resolve the dispute between Debtor and Deutsche Bank Trustee in Deutsche Bank Trustee's favor on the ample evidence already entered in the Court's record.

## II.
## FACTUAL BACKGROUND

1.      Debtor Tiffany M. Kritharakis ("Debtor") filed a petition for bankruptcy under Chapter 13 on June 10, 2010. (Doc. 1). On June 24, 2010, Debtor filed a Chapter 13 Plan ("Plan"), scheduling a pre-petition arrearage to Deutsche Bank Trustee's loan servicer, American Home Mortgage Servicing, Inc. ("AHMSI"). (Doc. 18).

2.      On July 28, 2010, Deutsche Bank Trustee filed a Proof of Claim ("Proof of Claim"), which listed a $336,345.41 claim with an arrearage amount of $18,935.66. (Claim 2-1). On August 6, 2010, Deutsche Bank Trustee objected to the Plan because the arrearage total listed in the Plan did not match the amount reflected in Deutsche Bank Trustee's Proof of Claim. (Doc. 29).

3.      On October 20, 2010, Debtor objected to the Proof of Claim ("Claim Objection") raising a number of issues including Deutsche Bank Trustee's authority to file a proof of claim and the accounting of fees and costs listed in the proof of claim. (Doc. 37).

4.      On November 24, 2010, Deutsche Bank Trustee filed an Amended Proof of Claim ("Amended Claim"). (Claim 2-2). The Amended Claim attached additional documentation in an effort to resolve the dispute raised by the Claim Objection. The documents include the Note, Mortgage, the allonges to the Note, and assignment of the Mortgage.[1]

5.      Deutsche Bank Trustee responded to the Claim Objection on December 3, 2010. (Doc. 43). In its response, Deutsche Bank Trustee attached the relevant loan documents, a copy of the foreclosure complaint, and relevant statutory materials.

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as set forth in Deutsche Bank's Reply to Debtor's Claim Objection. (Doc. 43).

6.      On December 13, 2010, Debtor served a Notice of Deposition and Request for Production of Documents on Deutsche Bank Trustee.  (Doc. 48, Ex. 1).  Excluding sub-topics, the Notice of Deposition seeks examination on sixteen topics with seventeen accompanying discovery requests.  Based on the frivolous and burdensome nature of these requests in light of the documentation already produced in this proceeding, Deutsche Bank Trustee moved for a protective order on January 14, 2011.  (Doc. 47, 48).  The Motion for Protective Order is still pending.

7.      Despite the active litigation between Debtor and Deutsche Bank Trustee, Tracy Hope Davis, United States Trustee for Region 2 ("UST") filed the Motion for Rule 2004 Examination of Representative(s) of Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPTI, Asset Backed Certificates, Series 2005-OPTI ("Motion") on January 26, 2011.  (Doc. 52).   The Motion seeks the production of eight categories of documents followed by an examination in New Haven, Connecticut, of a Deutsche Bank Trustee corporate representative.

8.      On February 16, 2010, Debtor filed a Statement of Support, supporting the UST's Motion.  (Doc. 59).  The Statement of Support only raises one additional argument—that the allonge is not "affixed" to the Note.  (*Id.* at 3).

### III.
### ARGUMENTS AND AUTHORITIES

**A.      The UST has failed to show "good cause" for an examination.**

9.      The UST acknowledges—and then fails to satisfy—her burden of "proving that good cause exists for taking the requested discovery."  *See In re Wilcher*, 56 B.R. 428, 434 (Bankr. E.D. Ill. 1985).  The court in *Wilcher* stated that the burden of showing good cause is

especially appropriately placed on the party seeking discovery when the "requested discovery is extensive" and may cause "substantial compliance difficulties." *Id.* at 435.  Good cause requires that the examination be reasonably necessary for the protection of legitimate interests.  *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992).  Good cause may also be shown if the information is needed to establish a claim, if denial of an examination request will cause the party requesting the information undue hardship or injustice, and if there are no less intrusive and expensive means to acquire the information allegedly needed.  *See, e.g., In re Dinublio*, 177 B.R. 932, 943 (E.D. Cal. 1993) (*quoting Boeing Airplane v. Coggeshall*, 280 F.2d 654, 670 (D.C. Cir. 1960)) ("good cause is shown if the examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice"); *see also Wilcher*, 56 B.R. at 434 ("Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs," and good cause is shown "by a claim that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice"); *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004);  *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998).

10.     The Motion fails to satisfy this standard.  The examination is not reasonably necessary because the Debtor is actively litigating Deutsche Bank Trustee's proof of claim and plan objection.  The UST has no "claim"; it has no pecuniary interest in this case.  Nor has the UST shown that denial of the examination would cause undue hardship or injustice.  The Debtor filed the Claim Objection, Deutsche Bank Trustee has established its claim, and the Debtor's active litigation eliminates any possible argument for "hardship" or "injustice."  Quite to the

contrary, it is Deutsche Bank Trustee that suffers injustice by the UST's unauthorized and unnecessary multiplication of proceedings that have no merit.

11.      Moreover, the two concerns raised by the UST—the process used by Deutsche Bank Trustee to file the Proof of Claim and Amended Proof of Claim and Deutsche Bank Trustee's right to enforce the Note and Mortgage—both fail to provide "good cause" for an examination.  The UST's position is flawed under applicable state and federal law, and the Motion should therefore be denied..

> i.      *The execution of the Proof of Claim fails to provide "good cause."*

12.      The only concern raised by the UST based on the face of the Proof of Claim involves the execution of the Proof of Claim by an attorney for Deutsche Bank Trustee, but this concern is unfounded.  Neither the UST—nor the Debtor for that matter—can challenge the Proof of Claim based on Mr. Buckley's lack of admission to the Connecticut Bar.  Nothing in the Bankruptcy Code or Rules requires that a proof of claim be signed by an attorney licensed to practice law in the jurisdiction in which it is filed.  All that is required by the Rules is that the proof of claim be executed by the creditor or its agent, and Mr. Buckley was Deutsche Bank Trustee's agent for that purpose.  *See* FED. R. BANKR. P. 3001(b).

13.      Nothing in Rule 3001 or on Official Form 10 requires attorneys to reveal "what steps" they took to determine their client's creditor status.  (*See* Doc. 52 at 6-7).  Such a disclosure would implicate work product privilege and unnecessarily burden the claims process.  Moreover, Deutsche Bank Trustee filed the Amended Claim, signed by the undersigned counsel.  (Claim 2-2).  The Amended Claim supersedes the prior Proof of Claim.  *See, e.g., EDP Med. Comp. Sys., Inc. v. U.S.*, No. 03-CV-3619, 2005 WL 3117433, at *1-2 (E.D.N.Y. Nov. 22, 2005) (amended proof of claim supersedes original proof of claim); *In re Enron Corp.*, No. 01-B-16034

(AJG), 2005 WL 3874285, at *1 ("The Amended Claim amended and superseded the Initial Claim.").  Simply put, no flaw exists on the face of the Proof of Claim or, relevant now, the Amended Claim, to warrant an examination.

        *ii.*    *The Motion is flawed under Connecticut law governing foreclosure and negotiable instruments.*

14.    The UST's remaining concern involves Deutsche Bank Trustee's right to enforce the Note and Mortgage.  Deutsche Bank Trustee has produced and provided copies of the Note, alonges, Mortgage, and assignments.  (*See* Claim 2-2), (Doc. 43).  Deutsche Bank Trustee has produced the original Note and alonges to the Debtor's counsel for inspection.  Deutsche Bank Trustee has carefully traced the chain of title through the transfers of the Note and Mortgage.  (*See* Doc. 43).  Deutsche Bank Trustee provided the Debtor with an accounting of the loan in response to a qualified written request.  (Doc. 43 at 8-9).

15.    While the UST apparently believes such documentation is insufficient support for Deutsche Bank Trustee's claim, it is, in fact, more than enough support to file a foreclosure complaint under Connecticut state law.  The UST cannot be permitted to launch an open-ended inquiry to transform the requirements of a proof of claim filing so dramatically.  *See* FED. R. BANKR. P. 3001(f) ("a proof of claim executed and filed . . . shall constitute prima facie evidence of the validity and amount of the claim"), *with New England Savs. Bank v. Bedford Realty Corp.*, 246 Conn. 594, 610-11, 717 A.2d 713 (1999) (citing D. Caron, CONNECTICUT FORECLOSURES: AN ATTORNEY'S MANUAL OF PRACTICE AND PROCEDURE (3d Ed. 1997) § 4.09, 106 (A foreclosure complaint "must contain certain allegations regarding the nature of the interest being foreclosed.  These allegations should include allegations relating to the parties and terms of the operative instruments, the nature of the default giving rise to the right to foreclosure, the amount

due and currently owing, the name of the record owner and party in possession, and appropriate prayers for relief . . . The terms of the mortgage determine the necessary elements of plaintiff's pram facie case")).    Instead, the UST would suggest Deutsche Bank Trustee must provide the level of proof necessary to obtain a judgment for the extraordinary remedy of foreclosure of the Debtor's equity of redemption and, in turn, the Debtor's title to the mortgage property, in order to merely have a valid claim.

16.    In any event, Deutsche Bank Trustee has met even the unnecessary burden the UST seeks the Court to impose.  The only facts alleged in support of the examination request are the execution of a June 11, 2010 Assignment of Mortgage with an effective date of May 1, 2005. Neither this nor the Debtor's allegations regarding whether the allonge is "affixed" to the Note provide "good cause" for an examination, and Deutsche Bank Trustee has adequately demonstrated its right to enforce the Note and Mortgage under Connecticut law.

17.    With respect to the second assignment of mortgage ("Assignment of Mortgage"), the UST points to two alleged "inconsistencies": a discrepancy between the allonge date and assignment date and the execution of an assignment with an earlier effective date.   These challenges to the Assignment of Mortgage are inconsequential under Connecticut law because the security follows the debt.  *See* CONN. GEN. STAT. § 49-17; *Chase Home Finance, LLC v. Fequiere*, 119 Conn. App. 570 (2010); *Bankers Trust Co. of Cal., N.A. v. Vaneck*, 95 Conn. App. 390, 391 (2006), *cert. denied*, 289 Conn. 908 (2006) (section 49-17 "codifies the longstanding common law principle that the mortgage follows the note, pursuant to which the note's rightful owner has the right to enforce the mortgage"); *Fleet Nat'l Bank v. Nazareth*, 75 Conn. App. 791 (2003); *Mfrs. & Traders v. Felix Figueroa, et al.*, 2003 Conn. Super. LEXIS 1138 (Apr. 22, 2003); (Doc. 43 n. 6).  The original Note is in the possession of counsel for Deutsche Bank

Trustee.  Additionally, Deutsche Bank Trustee has produced the allonges showing its right to enforce the Note.  Therefore, the transfer of the Note through the allonge gives Deutsche Bank Trustee the right to enforce the security interest.  The alleged "inconsistencies" are irrelevant as a matter of law.  For these reasons, the Motion and related document requests must be denied.[2]

          *iii.*     *The Debtor's concern regarding whether the allonge is "affixed" to the Note is flawed.*

18.     Finally, the Debtor's Statement of Support raises the issue of whether the allonge was "affixed" to the Note.  As an initial matter, the Debtor has failed to state what prevents Deutsche Bank Trustee from stapling the allonge to the Note.  Debtor has alleged no fear of collection from a third party or that any other entity will appear to collect the debt, nor can she.  Deutsche Bank Trustee has the original Note in its possession, and the allonges establish its ownership.  In fact, the Debtor scheduled this very indebtedness for payment in the Plan, and has been making post-petition Mortgage payments to Deutsche Bank as provided for in the Plan.  (Doc. 18).  Additionally, even if the allonge is not affixed to the Note, the transfer of an instrument to a party vests the transferee with the transferor's rights, including rights as a holder in due course.  CONN. GEN. STAT. § 42a-3-203; *see SKW Real Estate L.P. v. Gallicchio*, 49 Conn. App. 563, 569 (Conn. App. Ct. 1998) ("even without endorsement, when the plaintiff had lawful possession of the note and mortgage and the defendants made payments according to the terms of the note to the plaintiff for nineteen months, the plaintiff was entitled to enforce the note"); *Ulster Sav. Bank v. 28 Brynwood Lane*, 201 Conn. Super. LEXIS 1379, at *16 (May 27, 2010) ("Although an endorsement of an instrument payable to a specific person is essential under

---

[2] The UST's concerns regarding the "integrity" of the original Note also fail.  Deutsche Bank Trustee's counsel has maintained the Note since prior to the Debtor's bankruptcy case.  In fact, the Note was inspected by the Debtor prior to Debtor's Claim Objection.  Deutsche Bank Trustee's counsel maintained the Note in order to pursue a foreclosure judgment, and any attack on the "integrity" of the Note is factually baseless.

§ 42a-3-201 to being a 'holder' of a negotiable instrument, holder status is not essential to having the right and power to enforce an instrument"). Neither Debtor nor the UST have alleged the transferor lacked the right to enforce the Note. Additionally, liability for payment on a note arises as a result of a signature on the instrument. CONN. GEN. STAT. § 42a-3-401. Neither the Debtor nor the UST have disputed the signatures on the Note. The Note is in the possession of Deutsche Bank Trustee's counsel as agent for Deutsche Bank Trustee, and Debtor has failed to demonstrate that absence of a staple precludes enforcement or presents any threat of double collection.

19.     The Debtor's claim that the lack of stapling defeats Deutsche Bank Trustee's rights is further undermined by the staple holes in the upper left hand corner of the Note and allonge, which demonstrate the allonge was affixed to the Note. The one Connecticut Appellate Court case to address allonges, *SKW Real Estate L.P. v. Gallicchio*, found unstapling of an allonge from a note does not mean the allonge is no longer affixed to the note. 49 Conn. App. 563, 567, 716 A.2d 903 (1998). Instead, the court found that the plaintiff provided competent evidence to establish its right to enforce the note when "in the upper left hand corner of the note and allonge are multiple staple holes, indicating that the two documents had been stapled and separated on several occasions prior to trial." *Id.* at 567. The court found the stapling and unstapling did not defeat the right to enforce the note.

20.     Just like the note and allonge in *SKW Real Estate*, the Note and allonges maintained by counsel for Deutsche Bank Trustee contain staple holes in the upper-left hand corner of the documents. The staple holes existed when Debtor's counsel inspected the originals on October 14, 2010. Moreover, the documents themselves show Deutsche Bank Trustee's status as holder of the Note, and the allonge specifically identifies the borrower by name, loan

number, loan amount, and loan date. Therefore, as in *SKW Real Estate*, the lack of a staple as of October 14, 2010, presents no threat of collection from any other entity and does not prevent enforcement of the Note.[3]

**B.    The examination sought by the UST is unduly burdensome.**

21.    The UST's requested examination is unduly burdensome. Deutsche Bank Trustee is defending identical allegations being pursued by the Debtor. Deutsche Bank Trustee has fully briefed the issues and provided evidence to support its claim. The UST's involvement in this case duplicates and delays these proceedings.

22.    Deutsche Bank Trustee anticipates a Rule 2004 examination and production of the documents requested in the Motion will result in an additional $18,000 in attorneys' fees and approximately $3,000 in additional costs. (Boulton Decl. ¶ 4).[4]  Moreover, Deutsche Bank Trustee anticipates business disruption in the form of two to three days of an employee's time to prepare and attend this unnecessary examination. (*Id.*). The costs and time burden are increased by the request that a representative travel to Connecticut for the examination. Any representative would likely need to travel from Jacksonville, Florida, the principal place of business for the bankruptcy servicing for Deutsche Bank Trustee's loan servicer, AHMSI.    (*Id.* ¶ 2).

23.    This burden is completely unnecessary. The Court should deny the Motion and resolve the dispute in Deutsche Bank Trustee's favor based on the evidence contained in the record.

---

[3] Moreover, as in *SKW Real Estate*, the Debtor has a long history of payment. *See* Certification of Service of Affidavit of Debt and the Affidavit of Debt, filed in the pending foreclosure at Docs. 118 and 112. The affidavit shows Debtor and Evangelos Kritharakis made all required installment payments due under the Note from the date of origination on January 19, 2005, until they defaulted, which, as described therein, occurred as of the January 1, 2010 installment. Additionally, Debtor has scheduled payment on the Note and has, in fact, made payments during bankruptcy.
[4] A copy of the Declaration of Elizabeth Boulton is attached hereto as Exhibit A.

**OBJECTIONS AND RESPONSE TO UNITED STATES TRUSTEE'S MOTION
FOR RULE 2004 EXAMINATION OF REPRESENTATIVE(S) OF DEUTSCHE
BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SOUNDVIEW HOME
LOAN TRUST 2005-OPTI, ASSET BACKED CERTIFICATES, SERIES 2005-OPTI — Page 10**

## C.    The UST lacks standing to seek a Rule 2004 examination.

24.    The Motion exceeds the UST's powers under 11 U.S.C. § 307 and 28 U.S.C. § 586.  The UST's power is both defined and limited by statute.  The UST is a part of the United States Department of Justice, an agency of the United States government.  *In re Vance*, 120 B.R. 181, 185 (Bankr. N.D. Okla. 1990).  As an agency, the UST has only the power specifically granted to it by Congress.  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91 (2002) (an agency may not exercise power "inconsistent with the administrative structure Congress enacted into law"); *Michigan v. EPA*, 268 F.3d 1075, 1082 (D.C. Cir. 2001)  (The EPA, as a federal agency, "has…only those authorities conferred on it by Congress").

25.    The UST's powers and duties are primarily set forth in 28 U.S.C. § 586(a), and, while the statute gives the UST the power to monitor aspects of the bankruptcy process ranging from plans to fee applications, it does not provide the authority to conduct examinations under Rule 2004 or to monitor and investigate proofs of claim.  None of the many provisions of the Bankruptcy Code relating to the UST's duties and powers give this right either.[5]

---

[5] The UST is given specific powers and duties in the following sections of Title 11:  section 110(j) – to bring a civil action against a bankruptcy petition preparer; section 111 – to review and approve non-profit budget and credit counseling agencies; section 303(g) – to appoint an interim trustee in an involuntary case); section 321 – to serve as trustee in a case "if necessary"; section 327(c) – to object to employment by a trustee of a professional who represents a creditor; section 330(a) – to participate in hearings on compensation of officers in a case; section 332 – to appoint a consumer ombudsman; section 341 – to convene and preside at the first meeting of creditors; section 343 – to examine the debtor; section 345 – to approve certain corporate sureties; section 526 – to bring actions against a debt relief agency; sections 701(a) and 703(a) – to appoint interim Chapter 7 trustees or serve as interim trustee; section 704 – to file reports regarding whether an individual debtor filing is presumptively abusive; section 705(b) – to consult with creditors' committees; section 707(a)(3) – to move for dismissal of a Chapter 7 case for failure to timely file information; section 707 (b) - to seek dismissal of an individual debtor case found to be abusive; section 727 – to object to or seek revocation of a discharge); section 1102 – to appoint committees in Chapter 11 cases; section 1104 – to request the appointment of a trustee or examiner; section 1105 – to request the removal of a Chapter 11 trustee; section 1112(e) – to seek conversion of Chapter 11 case where material grounds exist; section 1114 – to appoint a committee of retired employees; section 1163 – to appoint a person from a specified list in a railroad reorganization case; section 1202 – to appoint a Chapter 12 trustee and request that a Chapter 12 trustee perform certain duties; section 1224 – to object to confirmation of a Chapter 12 plan; section 1302 – to appoint the standing Chapter 13 trustee; and section 1307 – to request conversion or dismissal of a Chapter 13 case.

26.    Section 307 provides that "the [UST] may raise and may appear and be heard on any issue in any case or proceeding under this Title but may not file a plan pursuant to section 1121(c) of this Title."  11 U.S.C. § 307.  While this provision is worded broadly, it is simply a grant of standing to carry out the UST's remaining duties.  The "may raise and may appear and be heard on any issue in any case or proceeding" language in section 307 is virtually identical to the grant of standing to the Securities and Exchange Commission (the "SEC") in Chapter 11 cases contained in section 1109(a) ("may raise and may appear and be heard on any issue in a case under this chapter...").  *See id.* (likening sections 307 and 1109); *In re BAB Enters.*, 100 B.R. 982, 985 (Bankr. W.D. Tenn. 1989).  Section 1109(a) has a clear single purpose – to give the SEC standing to participate in Chapter 11 cases.  *See In re Clark*, 927 F.2d 793, 796 (4th Cir. 1986) (noting that the UST has "standing under 307 even though [it] had no pecuniary interest in any case").  The same grant of standing is given to "parties in interest" under section 1109(b).  Section 1109(b) permits such parties in interest—including any creditor—to "raise and ... appear and be heard on any issue in a case" under chapter 11.  Like section 1109, section 307 simply does not contain any substantive power – it is a grant of standing to participate in cases and proceedings and perform statutorily defined and limited duties.

27.    In addition to a lack of statutory authority for the Motion, the UST lacks authority under the Federal Rules of Bankruptcy Procedure.  Rule 2004(a) provides: "On motion of any *party in interest*, the court may order the examination of any entity."  However, the UST is not a "party in interest" capable of seeking an examination under Federal Rule of Bankruptcy Procedure 2004.  The Bankruptcy Code consistently separates the UST from "parties in interest" by "or" or "and," showing that the terms are not interchangeable.  *See*, *e.g.*, 11 U.S.C. §§ 330(a),

521(f), 707(b), 1104(a), 1105, 1202(b), 1224, 1307(c).[6]   Similarly, the Federal Rules of

Bankruptcy Procedure consistently distinguish the UST from "parties in interest".  *See* FED. R.

BANKR. P. 1014(a), 2003(f), 2007(a), 2007.1(c), 2014(a), 5009, 6006(c), 9003, 9020.[7]

28.     The legislative history supports this conclusion.  In enacting section 307 of the

Bankruptcy Code, Congress addressed the distinction between the UST and a "party in interest":

> The U.S. Trustee is given standing to raise, appear, and be heard on any issue in any case
> or proceeding under title 11, U.S. Code—except that the U.S. Trustee may not file a plan
> in a chapter 11 case.  In this manner, the U.S. Trustee is given the same right to be heard
> as a party in interest, but retains the discretion to decide when a matter of concern to the
> proper administration of the bankruptcy laws should be raised.  By *not* designating the
> U.S. Trustee as a party in interest, the legislation ensures that there is no confusion over
> the U.S. Trustee's role in a case.  A party in interest normally has a pecuniary interest in a
> case; the U.S. Trustee has no pecuniary interest in any case, and functions only as an
> impartial administrator.   H. Rep. No. 99-764, at 27 (1986), *reprinted in*, 1986
> U.S.C.C.A.N. 5227, 5240 (emphasis added).

---

[6] *See, e.g.,* Section 330(a)(1): "After notice to the parties in interest *and* the United States Trustee;" Section 330(a)(2): "The court may, on its own motion or on the motion of the United States Trustee, . . . *or* any other party in interest;" Section 521(f): "At the request of the court, the United States trustee, *or* any party in interest;" Section 707(b)(1): "After notice and hearing, the court, on its own motion or on a motion by the United States trustee, trustee . . . *or* any party in interest;" Section 1104(a): "At any time . . . before confirmation of a plan, on request of a party in interest *or* the United States trustee;" Section 1105: "At any time before confirmation of a plan, on request of a party in interest *or* the United States trustee;" Section 1202(b)(2): " . . . on request of a party in interest, the trustee *or* the United States trustee;" Section 1224: "A party in interest, the trustee *or* the United States trustee may object to the confirmation of a plan;" Section 1307(c): " . . . on request of a party in interest *or* the United States trustee."

[7] *See, e.g.,* Rule 1014(a): "If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court . . .;" Rule 2003(f): "The United States trustee may call a special meeting of creditors on request of a party in interest *or* on the United States trustee's own initiative;" Rule 2007(a): " . . . on motion of a party in interest and after a hearing on notice to the United States trustee . . ." Rule 2007.1(c): "The application shall state . . . all the person's connections with the debtor, creditors, any other parties in interest, the United States trustee, and persons employed in the office of the United States trustee;" Rule 2014(a): ". . . all of the person's connections with the debtor, creditors, any other party in interest, the United States trustee, or any person employed in the office of the United States trustee;" Rule 5009: "If within 30 days no objection has been filed by the United States trustee *or* a party in interest, there shall be a presumption that the estate has been fully administered;" Rule 6006(c): "Notice of a motion . . . shall be given to . . . to other parties in interest as the court may direct, *and*, except in a chapter 9 municipality case, to the United States trustee;" Rule 9003: "(a) Except as otherwise permitted by applicable law, . . . any party in interest, and any attorney, accountant, or employee of a party in interest shall refrain from ex parte meetings . . . (b) Except as otherwise permitted by applicable law, the United States trustee . . . shall refrain from ex parte meetings;" Rule 9020: "Rule 9014 governs a motion for an order of contempt made by the United States trustee *or* a party in interest."

If Congress had intended the UST to have the same rights to conduct Rule 2004 examinations as "parties in interest", it would have designated the UST as a "party in interest" somewhere within the Code. It did not, and indeed, it has repeatedly denied the UST that role.

29.    At least one court has held the UST lacked standing to act in ways not expressly allowed by the Bankruptcy Code. *See In re Eaton*, 130 B.R. 74, 76 (Bankr. S.D. Iowa 1991); *see also In re Andrews*, 155 B.R. 769, 772 (9th Cir. B.A.P. 1993) (citing *Eaton* to illustrate limitations on who can object to a Chapter 13 plan). The court in *Eaton* held the UST lacked standing to object to a debtor's Chapter 13 plan, stating that the broad language of section 307 "contrast[ed] sharply with the specificity with which the duties of the U.S. Trustee are spelled out in 28 U.S.C. § 586" and "contrast[ed] even more sharply with instances in which Congress specifically provides when the UST may object under a particular section of the Bankruptcy Code."[8]

30.    Finally, the UST's appeal to the public interest standing is unavailing.[9] Congress well knows how to grant an agency broad "public interest" enforcement powers, and it does so only deliberately and sparingly. No statute grants the UST enforcement authorities comparable, for example, to 15 U.S.C. §§ 77t(d) and 78u(d)(3), which authorize the SEC to initiate lawsuits

---

[8] In the cases cited by the UST, the courts paint the UST's alleged powers in broad strokes, in *dicta*, while often grounding their holdings on statutes providing express support for the UST's action. *See, e.g.*, *United Artist Theatre Co. v. Walton (In re United Artist Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003) (finding UST had standing in a case involving terms of employment for professionals); *Thompson v. Greenwood*, 507 F.3d 416, 420 n. 3 (6th Cir. 2007) (noting, in *dicta*, that the United States Trustee could be an "interested party" authorized to object to venue under 28 U.S.C. § 1406). Other cases involve UST standing to appeal. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) (allowing appellate standing where UST had specific authority to act under 11 U.S.C. § 1104(b)(2)); *Stanley v. McCormick, Barstow, Sheppard, Wayte & Carruth (In re Donovan Corp.)*, 215 F.3d 929 (9th Cir. 2000).

[9] The UST's reliance on *In re A-1 Trash Pickup*, 802 F.2d 774 (4th Cir. 1986) is flawed. In *A-1 Trash Pickup*, the Fourth Circuit implied the UST's power to move to dismiss Chapter 11 cases, a power subsequently granted to the UST with the addition of 11 U.S.C. § 1112(e). While the Fourth Circuit in *A-1 Trash Pickup* implied a very limited power, Congress soon passed specific legislation expressly granting that power, underscoring BAC's argument that the UST must act pursuant to powers expressly granted by statute. *See In re Curtis L. Stuart@UCC1-207*, No. 05-95809, 2005 WL 3953894, at *2 (Bankr. N.D. Ga. Dec. 19, 2005) (finding UST has standing to move to dismiss Chapter 11 cases, a power expressly granted by 11 U.S.C. § 1112(e)).

**OBJECTIONS AND RESPONSE TO UNITED STATES TRUSTEE'S MOTION**
**FOR RULE 2004 EXAMINATION OF REPRESENTATIVE(S) OF DEUTSCHE**
**BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SOUNDVIEW HOME**
**LOAN TRUST 2005-OPTI, ASSET BACKED CERTIFICATES, SERIES 2005-OPTI — Page 14**

for money damages to enforce securities laws. Other agencies' enforcement powers are likewise rooted in explicit statutory authority. *See*, *e.g.*, 7 U.S.C. § 13a-1 (Commodities Futures Trading Commission); 15 U.S.C. § 56 (FTC); 42 U.S.C. § 3535(i) (HUD); 42 U.S.C. §§ 6991e, 6928, 7413 (EPA); 49 U.S.C. § 1151 (NLRB); 42 U.S.C. § 437d(a)(6) (FEC); 42 U.S.C. § 2000e-5(f) (EEOC); 49 U.S.C. §§ 507, 14702 (DOT); 49 U.S.C. § 46106 (FAA). The UST lacks virtually all the powers Congress granted these other agencies with enforcement responsibilities. The SEC, for example, has the power to adopt rules and regulations, to issue cease-and-desist orders, and to conduct hearings, 15 U.S.C. §§ 77g, 77h-1, 77j, 77s, 78u-3; the express statutory authority to conduct investigations that are "necessary and proper" for the enforcement of the securities laws and to subpoena witnesses, take evidence, and require production of documents in furtherance of any investigation, 15 U.S.C. §§ 77s(c), 78u; and the authority to pursue injunctions related to violations of the securities laws, and the federal courts are granted jurisdiction to enjoin acts and practices that violate the securities laws, 15 U.S.C. § 77t(b), 78u(d)(1). Congress did *not* grant the UST similar authority in bankruptcy cases. In fact, under the bankruptcy laws, the only actor permitted to operate in an enforcement capacity is the U.S. Attorney. *See* 28 U.S.C. § 586(a)(3)(F).

**D.    Given the pending contested matter, discovery must be conducted under the Federal Rules of Civil Procedure, not Rule 2004.**

31.    Courts have imposed limits on the use of Rule 2004 examinations under the well-recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure—not by Rule 2004. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); *accord 2435 Plainfield Ave., Inc. v. Township of Scotch Plains (In re 2435 Plainfield Ave., Inc.)*, 223 B.R. 440, 455-56

(Bankr. D.N.J. 1998) (collecting cases); *cf. In re Buick*, 174 B.R. 299, 306 (Bankr. D. Col. 1994) (recognizing that this limitation does not apply to parties not affected by, and issues not raised in, pending adversary proceedings). The basis for this proscription "lies in the distinction between the broad . . . nature of the Rule 2004 exam and the more restrictive nature of discovery under [the Federal Rules of Civil Procedure]." *2435 Plainfield*, 223 B.R. at 456 (internal citations omitted); *see also In re Dinubilo*, 177 B.R. 932, 939-40 & n.12 (E.D. Cal. 1993) (contrasting the substantive differences between Rule 2004 examinations and discovery under the Federal Rules of Civil Procedure); *In re Duratech Indus., Inc.*, 241 B.R. 291, 296 (Bankr. E.D.N.Y.) (characterizing the vigor and breadth of Rule 2004 exams as a "free-and-easy practice"), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999*)*. For example, under Rule 2004: "the witness has no right to be represented by counsel except at the discretion of the court; there is only a limited right to object to immaterial or improper questions; there is no general right to cross-examine witnesses; and no right to have issues defined beforehand." *Dinubilo*, 177 B.R. at 939-940.

32.    Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure. *See 2435 Plainfield*, 223 B.R. at 456 (quoting Norton Bankruptcy Law & Practice for the proposition that "courts will usually not allow a 2004 exam where an adversary proceeding is pending, because the party requesting an examination is likely seeking to avoid the procedural safeguards of [the Federal Rules of Civil Procedure]"); *Bennett Funding*, 203 B.R. at 28 ("Courts are wary of attempts to utilize Fed. R. Bankr. P. 2004 to avoid the restrictions of the Fed. R. Civ. P. in the context of adversary proceedings"); *In re Valley Forge Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) ("Many courts have expressed distaste for efforts of parties to utilize [Rule] 2004 examinations to circumvent the restrictions of the [Federal Rules of Civil

Procedure] in the context of adversary proceedings or contested matters").  For these reasons, where contested matters are pending, discovery under the Federal Rules of Civil Procedure, incorporated by Federal Rule of Bankruptcy Procedure 9014, and not Rule 2004, must be pursued.  The pending contested matter initiated by the Debtor's Claim Objection precludes the UST's attempted use of Rule 2004 here.

**E.     The UST's document requests are overly broad, unduly burdensome, and irrelevant.**

33.     The only issue raised by the UST in the Motion—an issue identical to the one raised by the Debtor in the Claim Objection—is Deutsche Bank Trustee's right to enforce the Note and Mortgage.  (*See* Doc. 52 at 2).  Despite this narrow issue, which has been resolved by the documents filed in Deutsche Bank Trustee's Amended Claim, the UST seeks the production of and an examination on eight categories of documents.  Each one is objectionable as outlined below.

> *a.     Any and all documents, computer records, reports, or other information in the possession, custody or control of Deutsche that were used or relied upon by Deutsche in support of the proofs of claim filed on its behalf in the United States Bankruptcy Court for the District of Connecticut, in the matter of Tiffany M. Kritharakis, Case Number 10-51328 (AHWS)*

Deutsche Bank Trustee objects to Document Request (a) on the grounds it is overly broad, calls for information protected by the work product and attorney-client privilege, and calls for information that is not relevant nor reasonably likely to lead to the discovery of admissible evidence.  Neither the UST nor the Debtor have raised any substantive issue with respect to the Proof of Claim other than Deutsche Bank Trustee's right to enforce the Note and Mortgage. Deutsche Bank Trustee has produced the documents establishing that right, and any further production or examination on this subject matter is irrelevant and burdensome.

> b.     *Any and all documents, computer records, reports, or other information in the possession, custody or control of Deutsche regarding and/or related to any requests made by the Debtor to Deutsche regarding her Note and Mortgage between June 2010 to present.*

Deutsche Bank Trustee objects to Document Request (b) on the grounds it is overly broad and calls for information that is not relevant nor reasonably likely to lead to the discovery of admissible evidence.  The UST's Motion completely fails to address why such documents are necessary, how they would conceivably establish any "claim" of the UST, or why denial of its request would constitute it hardship or injustice.  Moreover, most, if not all, of the documentation responsive to Document Request (b) appears on the Court's record as filings in this case or exhibits to Debtor's Claim Objection.

> c.     *Any and all documents, computer records, reports, or other information in the possession, custody or control of Deutsche that were used or relied upon by Deutsche in support of its objection to the chapter 13 plan filed by the Debtor.*

Deutsche Bank Trustee objects to Document Request (c) on the grounds it is overly broad and calls for information protected by the work product and attorney-client privileges.  Additionally, Document Request (c) calls for information that is not relevant nor reasonably likely to lead to the discovery of admissible evidence.  Again, the UST fails to provide any reason why it is entitled to such information or why it is necessary to establish a "claim" by the UST or why denying its request would cause it hardship or injustice.  The UST's Motion does not allege that either Deutsche Bank Trustee's objection to the Plan or its Reply to the Debtor's Objection to the POC is flawed in any way and has shown no cause for the production of these documents or an examination on this topic.

        d.        *Any and all documents, computer records, reports, or other information in the possession, custody or control of Deutsche that were used or relied upon by Deutsche in support of its response to the Debtor's objection to Deutsche's POC.*

Deutsche Bank Trustee objects to Document Request (d) on the grounds it is overly broad and calls for information protected by the work product and attorney-client privileges. Additionally, Document Request (d) calls for information that is not relevant nor reasonably likely to lead to the discovery of admissible evidence. Again, the UST fails to provide any reason why it is entitled to such information or why it is necessary to establish a "claim" by the UST or why denying its request would cause it hardship or injustice. The UST's Motion does not allege Deutsche Bank Trustee's objection to the Plan is flawed in any way and has shown no cause for the production of documents or an examination on this topic

        e.        *All statements and account histories for the mortgage loan in the name of Debtor.*

Deutsche Bank Trustee objects to Document Request (e) on the grounds it is overly broad and calls for information that is not relevant nor reasonably likely to lead to the discovery of admissible evidence. Again, the UST fails to provide any reason why it is entitled to such information or why it is necessary to establish a "claim" by the UST or why denying its request would cause it hardship or injustice. The UST has not alleged any problems in Deutsche Bank Trustee's calculation of the arrearage, and Deutsche Bank Trustee has provided account histories to the Debtor. The UST has not shown cause for the production of these documents or an examination on this topic.

f.     All documents evidencing, relating or referring to, the authority given by Deutsche and/or Deutsche's authorized agents to Lawrence J. Buckley of Dallas, Texas as "creditor's authorized agent" to act on behalf of Deutsche and file a proof of claim on behalf of Deutsche to individuals who are not employees, officers or directors of Deutsche.

Deutsche Bank Trustee objects to Document Request (f) on the grounds it is vague and ambiguous such that Deutsche Bank Trustee could not reasonably respond. Additionally, Document Request (f) is overly broad and unduly burdensome by requiring Deutsche Bank Trustee to produce information that exceeds the requirements of Bankruptcy Rule 3001 and Official Form 10. Additionally, Deutsche Bank Trustee objects to Document Request (f) on the grounds it calls for information protected by the attorney client and/or work product privileges.

g.     All documents evidencing, relating or referring to, the Sand Canyon AOM, including, but not limited to, any documents evidencing the corporate authority of Rhonda Werdel to execute the Sand Canyon AOM as Assistant Secretary of Sand Canyon.

Deutsche Bank Trustee objects to Document Request (g) on the grounds it is overly broad and unduly burdensome. Additionally, Deutsche Bank Trustee objects to Document Request (g) on the grounds it is not relevant nor reasonably likely to lead to the discovery of admissible evidence. As shown by the authorities cited at pages 5 through 6, above, even the absence of the assignment does not impact Deutsche Bank Trustee's right to enforce the Note and Mortgage. It holds and owns the original Note.

h.     All documents evidencing, relating or referring to, or concerning any policy or procedure, written or otherwise published, regarding Deutsche's drafting, verifying and filing of proofs of claims in bankruptcy cases in the District of Connecticut, including but not limited to manuals, training manuals, guidebooks or any other documents containing instructions and/or guidance of filing proofs of claim.

Deutsche Bank Trustee objects to Document Request (h) on the grounds that it calls for information protected by the attorney-client and work product privileges as well as information

that is confidential and/or trade secret. (*See* Boulton Decl. ¶ 3). Deutsche Bank Trustee further objects to Document Request (h) on the grounds it calls for information that is not relevant nor reasonably likely to lead to the discovery of admissible evidence. The UST's concerns, while groundless as a matter of law, fail to implicate company-wide or general procedural practices. The UST has failed to show cause for such an investigation, and the Court should not allow such a burdensome production of documents or an examination on this topic to go forward.

34.    Finally, AHMSI objects to the examination on the grounds the UST has failed to provide specific topics for examination. Instead, the UST vaguely references testimony regarding "the foregoing issues and regarding documents to be produced". (Doc. 52 at 8). To the extent the testimony relies on the categories of documents requested above, the breadth of the document requests will make any examination unduly burdensome, as any individual testifying would have to have detailed knowledge regarding the loan history, loan accounting, and company policy along with details of a significant number of documents. The UST's vague examination request should be denied.

## IV.
## CONCLUSION

WHEREFORE, Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPTI, Asset Backed Certificates, Series 2005-OPTI prays that this Court deny the Motion and award Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPTI, Asset Backed Certificates, Series 2005-OPTI, such other and further relief as is just and proper.

DATED: March 7, 2011.

Respectfully submitted,


By: */s/ Martha Croog*
Martha Croog, Esq.
Martha Croog, LLC
The Brownstone
190 Trumbull Street, Second Floor
Hartford, CT 06103
(860) 236-9661
(860)656-7517 (fax)
Bar No. CT12730

**ATTORNEY FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2005-OPTI, ASSET BACKED CERTIFICATES, SERIES 2005-OPTI**

Of Counsel:

Thomas A. Connop
  Texas Bar No. 04702500
Bradley C. Knapp
  Texas Bar No. 24060101
LOCKE, LORD, BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Telecopier)

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-51328 (AHWS) |
| TIFFANY M. KRITHARAKIS, | § | |
| | § | CHAPTER 13 |
| Debtor | § | |

## DECLARATION OF ELIZABETH BOULTON

1.     My name is Elizabeth Boulton. I am over twenty-one years of age, of sound mind, and otherwise competent to make this declaration. I have never been convicted of a crime involving moral turpitude. Every factual statement contained herein is within my personal knowledge and is true and correct.

2.     I have been employed by American Home Mortgage Services, Inc. ("AHMSI") since February 23, 2009, as Vice President, Default Administration. AHMSI's principal place of business for bankruptcy servicing is located in Jacksonville, Florida. AHMSI acts as servicer for Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPTI, Asset Backed Certificates, Series 2005-OPTI ("Deutsche Bank"), and therefore any information requested by the United States Trustee and any examination will be handled by AHMSI as Deutsche Bank's representative. The residence, and the regular place of employment and transaction of business of any individual, and the place where anyone who could be prepared to testify to matters relating to this case are more than 100 miles from New Haven, Connecticut.

3.     AHMSI's policies and procedures are unique to AHMSI's mortgage servicing operations. AHMSI treats its policies and procedures as proprietary and confidential, and believes they provide it with a competitive advantage which would be lost if such policies and procedures were not protected. AHMSI does not disseminate its policies and procedures outside of AHMSI unless the production of the policies and procedures is protected by a court order.

1

Upon commencement of their employment AHMSI employees sign a confidentiality agreement to further protect the confidentiality of policies and procedures.

4.      Additionally, I have reviewed the United States Trustee's document requests and request for an examination.  Based on my experience with discovery requests and litigation, I anticipate compliance with the United States Trustee's requests will result in as much as $18,000 in attorneys' fees and $3,000 in costs.  Preparation for the examination and the examination itself will require 2-3 days of an employee's time.

I make the foregoing declarations under penalty of perjury this 7th day of March, 2011.

_Elizabeth Dolen_