Linda M. Tirelli, Esq.
Law Offices of Linda M. Tirelli PC
Attorney for Debtor
One North Lexington Ave. 11th Floor
White Plains, NY 10601
Phone: (914)946-0860 Fax: (914)946-0870
Email: WestchesterLegal@AOL.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------------------X

| | |
|---|---|
| **IN THE MATTER OF** | : |
| | : |
| | :   **CHAPTER 13** |
| **TIFFANY M. KRITARAKIS** | : |
| **CHAPTER 13 DEBTOR** | :   **CASE NO: 10-51328 (AHWS)** |
| | |
| | :   **DEBTOR'S OPPOSITION TO** |
| | :   **MOTION FOR PROTECTIVE** |
| |    **ORDER FILED BY DEUTSCHE** |
| |    **BANK NATIONAL TRUST** |
| |    **COMPANY, AS TRUSTEE FOR** |
| |    **SOUNDVIEW HOME LOAN** |
| |    **TRUST 2005-OPTI, ASSET** |
| |    **BACKED CERTIFICATES,** |
| |    **SERIES 2005-OPTI** |

---------------------------------------------------------------------X

**DEBTOR'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER**
**FILED BY DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR**
**SOUNDVIEW HOME LOAN TRUST 2005-OPTI, ASSET BACKED CERTIFICATES,**
**SERIES 2005-OPTI**

**NOW HERE COMES** the Chapter 13 Debtor, Ms. Tiffany Kritharakis (the "Debtor") through

her counsel of record, and hereby filed her Objection to the Motion filed by Deutsche Bank

National Trust Company, As Trustee For Soundview Home Loan Trust 2005-Opti, Asset Backed

Certificates, Series 2005-OPT I, ( "DBNTC" or "Deutsche Bank") for a Protective Order (the

"Motion") dated January 14, 2011 and Moemorandum of Law (the "Memo") which appear as

Documents Number 47 and 48, respectively, on the Court's ECF system. In support of her Objection, the Debtor respectfully represents and alleges as follows:

The Motion should be denied as Deutsche Bank fails to establish grounds for the extraordinary relief it is seeking. Deutsche Bank acting in a capacity as Trustee for a Securitized Trust, maintains that it is a secured creditor of the Debtor, however, rather than providing documentation to demonstrate this status, Deutsche Bank provides the Debtor and this Court with what can only be described as false and misleading information as well as fabricated documents and false statements intended to entice reliance upon the same. The exact nature and further seeks an order from the Court protecting it from producing a witness(es) and additional documents pursuant to the Debtor's requests for the same. In support of its Motion, Deutsche Bank makes a bald assertion that the Debtor is on a "fishing expedition" (see "Memo" at pg. 3) and that "none of the discovery sought by the Debtor is relevant to any matter at issue" and that the Debtor further seeks "to "harass and annoy" Deutsche Bank (see "Motion" at pg. 2). Such assertions are as unfounded as they are generic and broad and do not warrant a blanket order of protection in light of the totality of circumstances in this case.

WHEREFORE, The Debtor hereby respectfully requests the Court deny Deutsche Bank's Motion for Protective order.

| | |
|---|---|
| March 25, 2011 | /S/ LINDA M. TIRELLI |

                                                Linda M. Tirelli, Esq.
Law Offices of Linda M. Tirelli PC
Attorney for Debtor
One North Lexington Ave. 11th Floor
White Plains, NY 10601
Phone: (914)946-0860
Fax: (914)946-0870
Email: WestchesterLegal@AOL.com

Linda M. Tirelli, Esq.
Law Offices of Linda M. Tirelli PC
Attorney for Debtor
One North Lexington Ave. 11th Floor
White Plains, NY 10601
Phone: (914)946-0860 Fax: (914)946-0870
Email: WestchesterLegal@AOL.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------------------X

| | |
|---|---|
| **IN THE MATTER OF** | : |
| | : |
| | : **CHAPTER 13** |
| **TIFFANY M. KRITARAKIS** | : |
| **CHAPTER 13 DEBTOR** | : **CASE NO: 10-51328 (AHWS)** |
| | : **DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF HER OBJECTION TO** |
| | : **MOTION FOR PROTECTIVE ORDER FILED BY DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2005-OPTI, ASSET BACKED CERTIFICATES, SERIES 2005-OPTI** |

---------------------------------------------------------------------X

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF HER OBJECTION TO MOTION FOR PROTECTIVE ORDER FILED BY DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2005-OPTI, ASSET BACKED CERTIFICATES, SERIES 2005-OPTI**

The Debtor hereby offers this Memorandum of Law in support of her Objection to Motion for Protective Order filed by Deutsche Bank National Trust Company, As Trustee For Soundview Home Loan Trust 2005-OPTI, Asset Backed Certificates, Series 2005-OPTI. The Court should know that the undersigned served both a Notice of Deposition and Request for Production of

Documents via Subpoena on the purported creditor, Deutsche Bank Nation Trust Company and American Home Mortgage Servicing Inc. on or about March 24, 2011[1]

# FACTUAL BACKGROUND

By way of background, a mortgage loan comprised of a Promissory Note and Mortgage was originated by "MAC Mortgage, A Connecticut Corporation" on or about January 19, 2005 naming the Chapter 13 Debtor, Ms. Tiffany Kritharakis (hereinafter the "Debtor") and her husband, a non-filing spouse, as the "borrower." The Court should know that the first encounter between the debtor and purported creditor, Deutsche Bank National Trust Company, As Trustee For Soundview Home Loan Trust 2005-Opt I, Asset Backed Certificates, Series 2005-Opt I was when the Debtor was served with a "Summons" and "Complaint for Foreclosure of Mortgage" dated **April 13, 2010**, bearing the Return Date of May 4, 2010 filed with the Superior Court of the State of Connecticut Judicial District of Stamford/ Norwalk at Stamford ( hereinafter referred to as " Summons and Complaint"). A copy of said Summons and Complaint is attached hereto as **Exhibit "A."**

The Debtor avers that the Summons and Complaint was filed by the Law Offices of Martha Croog, LLC and signed by Attorney Nicholas N. Oulette. Paragraph 5 of said Summons and

---

[1] The undersigned has not received the hard copy of the proof of service and will submit the same in a supplemental exhibit together with exact copies of said Notice of Deposition and Requests for the Production of Documents.

Complaint, reads as follows:

> 5. MAC assigned the Note and Mortgage to Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPT1, Asset-Backed Certificates, Series 2005-OPT1 (the "Plaintiff") by an instrument proposed for recording in the Norwalk Land Records. A copy of the assignment to the Plaintiff is annexed as Exhibit D and made a part hereof.

On or about June 5, 2010 the undersigned sent a letter to Attorney Oulette requesting a copy of the documents referred to in paragraph 5 of the Summons and Complaint. As copy of the correspondence is attached hereto as **Exhibit "B"** To date, said request was never responded to and the documents in schedule "D' of the Summons and Complaint were never produced.

Mr. Oulette also submitted a document, "Affidavit of Debt" to the Connecticut State Superior Court, Judicial Districtt of Stamford/Norwalk at Stamford bearing Docket Number FST-CV10-6004733-S and dated April 19, 2020, Affidavit of Debt notarized curiously 17 days later on Mary 6, 2010 in Jacksonville, Florida. Said Affidavit of Debt is signed by "Joseph Kaminski" as an "Asst. Secretary of American Home Mortgage Servicing Inc." ( hereinafter "AHMSI") Paragraph 4 of the Affidavit of Debt signed by Mr. Kaminski reads as follows:

> 4. I am personally familiar with the computer business records of the mortgage loan account of the Defendants with respect to a note in the original principal amount of $340,000.00 that the Defendant signed on January 19, 2005 (the Note.)

A copy of the Affidavit of Debt is attached hereto as **Exhibit "C".**

The Debtor avers that Mr. Kaminski is not an employee of AHMSI and has no personal knowledge of Ms. Kritharakis's mortgage loan account. The Debtor further avers that Mr. Kaminski is actually an employee of a third party company, LPS Default Solutions, LLC which is subject to a trilateral contract with AHMSI and Martha Croog, LLC.

On June 10, 2010 the undersigned called Mr. Oulette to follow up on her prior written request and to advise Mr. Oulette that the debtor would be filing a petition for protection under the US Bankruptcy Code the same day. The undersigned further requested a copy of the full summons and complaint together with all exhibits. Said phone conversation is memorialized in an email from the undersigned to Mr. Oulette dated June 10, 2010. Mr. Oulette responded to the undersigned via email, on June 10, 2010 attaching " Request to Amend Complaint" and "Amended Complaint" both dated June 10, 2011. A copy of the June 10, 2010 email exchange is attached hereto as **Exhibit "D"** A copy of the June 10, 2010 " Request to Amend Complaint" and "Amended Complaint" are attached hereto collectively as **Exhibit "E."** Paragraph 6 [2] of the would-be amended complaint reads as follows:

> 6. SCC assigned the Mortgage to Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPT1, Asset-Backed Certificates, Series 2005-OPT1 (the "Plaintiff") by an instrument proposed for recording in the Norwalk Land Records. A copy of the assignment to the Plaintiff is annexed as Exhibit E and made a part hereof.

To date there has been no assignment of mortgage from SCC to Deutsche Bank National Trust Company, As Trustee For Soundview Home Loan Trust 2005-Opt I, Asset Backed Certificates, Series 2005-Opt I dated prior to June 10, 2010 despite being identified in both the April 13, 2010

---

[2] The reference of "SCC" in Paragraph 6 of the Amended Complaint refers to "Sand Canyon Corporation"

Summons and Complaint <u>and</u> the June 10, 2010 Request to Amend Complaint and Amended Complaint.

The Debtor commenced this action by the filing of a Chapter 13 Petition on June 10, 2010. The Debtor is owner of the premises located at 25 Powder Horn Rd. Norwalk, CT 06850 which she maintains with her husband as their primary residence. Debtor's chapter 13 Plan calls for retention of this home. Schedule D of Debtor's petition, lists American Home Mortgage Services as a secured creditor on this home. This debt is listed as disputed. A copy if the Debtor's Schedule "D" is attached hereto as **Exhibit "F."**

On or about July 28, 2010, a Proof of Claim was filed by purported creditor, Deutsche Bank National Trust Company, As Trustee For Soundview Home Loan Trust 2005-Opt I, Asset Backed Certificates, Series 2005-Opt I (hereinafter "Deutsche Bank") and appears as Claim #2-1 on the Court's ECF system(hereinafter "Claim 2-1"). A copy of Claim 2-1 is annexed hereto as **Ex. "G"** . Claim 2-1 is signed by Lawrence Buckley as the "creditor's authorized agent"[3] In support of its claim #2-1, the Deutsche Bank the following documents:

1. Itemization of Claim
2. **A Promissory Note, dated January 19, 2005 identifying the lender as "MAC Mortgage" and the Debtor and her spouse as the "borrower", said Note is notably <u>un-indorsed</u> and bears a stamp, "Verified to be a True and Accurate Copy of the Original" with initials which appear to be "SP"**
3. A Mortgage dated January 19, 2005 identifying the lender as "MAC Mortgage" and the Debtor and her spouse as the "borrower."

---

[3] Mr. Lawrence Buckley is known to be a lawyer employed by Brice, Vander Linden and Wernick, P.C. a law firm based in Dallas Texas.

The undersigned engaged in a series of communications as between the undersigned and various attorneys at Martha Croog, LLC, local counsel of record, inquiring about the unendorsed Note and lack of any relationship as between the named creditor identified in POC 2-1 and the supporting documents. In the Fall of 2010, the undersigned was invited to inspect documents held in the offices of Martha Croog, LLC in Hartford, CT and on the morning of October 14, 2010, the undersigned, accompanied by Attorney Martha Croog, did inspect and photograph documents. Included among the documents were TWO (2) pages each labled "Allonge" which were not attached to the Promissory Note. The Note was clearly un-indorsed. Also included were TWO(2) Assignments of Mortgage as follows:

1. Assignment of Mortgage dated January 19, 2005 identifying the Assignor as "M.A.C. Mortgages, A Connecticut Corporation" and identifying the Assignee as "Option One Mortgage Corporation, A California Corporation" signed by Timothy McNamara, President of MAC Mortgages and notarized by Maria Redente. (hereinafter the "First Assignment")

2. Assignment of Mortgage dated (post-petition) June 11, 2010, identifying the Assignor as "Sand Canyon Corporation fka Option One Mortgage Corporation" and the Assignee "Deutsche Bank National Trust Company, As Trustee For Soundview Home Loan Trust 2005-Opt I, Asset Backed Certificates, Series 2005-Opt I" signed by Rhonda Werdel, Assistant Secretary of Sand Canyon Corporation fka Option One Mortgage Corporation and notarized by R.A. Salazar. (Hereinafter the "Second Assignment") Said Assignment of Mortgage indicates it is "made effective May 1, 2005"[4]

---

[4] Both the Allonges and Assignments of Mortgage were later submitted to this court by Attorney Martha Croog as exhibits to Amended Proof of Claim #2-2

The purported creditor, Deutsche Bank, is a Trustee of a Securitized Trust governed by a Pooling and Servicing Agreement. A copy of the Pooling and Servicing Agreement ( "PSA") as filed with the Security Exchange Commission is attached hereto as **Exhibit "H"**[5] A Securitized Trust is a bankruptcy remote vehicle to pool assets, in this case mortgage loans, to be packaged ans sold as securities to certificate holders. A prospectus describing the assets to be owned by the Trust and investor information is attached hereto as **Exhibit "I".**

The conveyance provisions of the PSA and as described in the Prospectus indicate a specific sequence of transferred required for any asset to be deposited with the Trust. Said sequence of transfers is as follows:

> A. **Originating Lender** →TO→ B. **Originator "Option One Mortgage**→TO→ C. **Seller "Greenwich Capital Financial Products, Inc.** →TO→ D. **Issuing Entity "Soundview 2005-OPT1"** [6]

All of the above described transfers had to occur on or before the closing date of the trust, May 12, 2005. There is nothing offer by the purported creditor to indicate the complete chain of transfers required by the PSA occurred. A set of flow charts indicating what is required by the PSA and what is set forth as the purported sequence of transfers in accordance with the documentation provided by the purported creditor are attached hereto as **Exhibits J and K** respectively. The Debtor avers that the PSA further requires all loans be in good standing ie., not in default at the time they are deposited into the Trust. The debtor's loan was not only subject to foreclosure but also subject of a bankruptcy at the time of the purported Second

---

[5] The only copy of the PSA available through the SEC is notably unsigned. The debtor requested a copy of the executed PSA in her discovery requests.
[6] See PSA Section 2.01

Assignment and thus could not be accepted into the Trust in the manner described by the purported creditor.

The Debtor further avers that Sand Canyon Corporation could not have effectuated any transfers of mortgage in June 2010 as the documents presented by the purported creditor would have th Court believe. In fact, in a signed declaration dated March 18, 2009 Mr. Dale Sugimoto, the President of Sand Canyon Mortgage declared, in part as follows:

> 4. In addition, in its 2008 Annual Report, HRB stated as follows:
>
> DISCONTINUED OPERATIONS - Effective November 2006, our Board of Directors approved a plan to exit the mortgage business operated through our subsidiary, OOMC, and we began reporting that business as discontinued operations. During our third fiscal quarter ended January 31, 2008, OOMC ceased all loan origination activities, and initiated a plan to sell its servicing operations.
>
> On April 30, 2008, OOMC sold its loan servicing assets to an affiliate of WL Ross & Co. LLC (WL Ross) pursuant to a previously announced agreement.
>
> 5. Accordingly, Sand Canyon is no longer engaged in the servicing of residential mortgage loans. Sand Canyon has no servicing rights.
>
> 6. Sand Canyon also does not own any residential real estate mortgages.

A copy of Mr. Sugimoto's declaration is attached hereto as **Exhibit "L".**

Given the existing circumstances, the Debtor avers that the purported creditor lacks standing and is simply not a real party in interest pursuant to FRBP 7017.

The Debtor further avers the documents presented by the purported creditor namely 2 allonges AND the Second Assignment of Mortgage are false and have been fabricated for the purpose of enticing the Court to rely upon the same; the actions of submitting and continuing to advocate for false documents is a fraud upon this court.

The Debtor further avers that the accounting presented in the Proof of Claim 2-1 which purports t calculate the amounts owed as of June 10, 2010 include numerous bogus charges not identified in the affidavit of debt which affirms the amount of the purported debt owed through May 31, 2010. A copy of the Itemization attached to the Proof of Claim #2-1 is attached hereto as **Exhibit "M"** and the court may compare the same with the aforementioned Affidavit of Debt attached as **Exhibit "N".**

## **LEGAL ARGUMENT**

The Federal Rules' provisions were developed under the philosophy that "prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged."[7] This philosophy is reflected in the purposes served by the discovery provisions: to avoid surprise and the possible miscarriage of justice; to disclose the nature and scope of the controversy; to narrow and frame the issues for trial; and, to aid the parties in obtaining information needed to prepare for trial.[8] The rules effectuate these ends by providing loose restrictions on information initially discoverable[9] but then limiting what may be presented at trial. [10]

---

[7] CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2001, note 22, at 15. (1970) [hereinafter WRIGHT & MILLER]. ("It is now made explicit that Rule 26 contains the central provisions on scope of discovery that control all the particular discovery devices.").

[8] WRIGHT & MILLER, at 17-18.

[9] The restrictions on information subject to discovery are "loose" in that the information sought need only be relevant to the pending dispute. The relaxed nature of this standard is revealed by the text of Rule 26(b) which states that inadmissibility of the information sought is not a valid objection as long as the information is reasonably calculated to lead to admissible evidence. 9 COLLIER ON BANKRUPTCY P 7026.05, at 7026-10 (15th ed. 1991). *See supra* note 8.

[10] WRIGHT & MILLER, , at 15-16. The limitations on admissibility are governed by the law of evidence. FED. R. CIV. P. 26(b). The phrase "notice pleading," reflects the change in the function performed by the pleadings under the Federal Rules. Under pre-Federal Rules practice, the pleadings were relied on to provide notice of a pending action, to formulate the issues for trial, and to reveal the relevant facts. Hickman v. Taylor, 329 U.S. 495, 500(1947). Thus, federal practice became very rigid and frequently trials were carried out "in the dark" with respect to certain facts. *Id.* at 500-01. The Federal Rules sought to remedy this problem by limiting the

The scope of discovery under the Federal Rules is necessarily broad, so that discovery may effectively fulfill its many purposes. The only requirement for discovery is that the information sought be "relevant to the subject matter involved in the pending action." [11] The vague requirements of notice pleading under the Federal Rules highlight the ease of meeting this standard. [12]

The request for Protective Order is being made by counsel without any legal or good faith reason to pursue a protective order for deposition testimony and production of documents. A party seeking a protective order for discovery materials must demonstrate that "good cause" exists for the protection of that evidence. "Good cause" is established where it is specifically demonstrated that disclosure will cause a specific prejudice or harm. In the instant case, Deutsche Bank

---

pleadings to providing notice to the parties, leaving the remainder of the tasks to be performed by the new, liberal discovery procedures. *Id.* at 501. These changes seem to reflect the belief that *mutual knowledge* of all relevant facts held by both parties is necessary for effective litigation. *Id.*
8 WRIGHT & MILLER, , at 46-47. *See also* 4 MOORE'S FEDERAL PRACTICE, P
26.67, at

[11] FED. R. CIV. P. 26(b). Rule 26 provides in pertinent part:
Rule 26. General Provisions Governing Discovery
(b) DISCOVERY SCOPE AND LIMITS. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissable at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
(c) PROTECTIVE ORDERS. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that the discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.
FED. R. CIV. P. 26.
[12] Note 8 Supra.

through its counsel seeks to quash all requests for discovery made by the debtor citing broad unfounded basis of being unduly burdened and incurring excessive costs. The creditor's allegations of harm are overly broad, speculative and wholly unsubstantiated. Courts have held that the showing of "good cause" under Fed. R. Civ. P. 26(c) is a "heavy burden." Rivera v. NIBCO, Inc., 384 F.3d 822, 827 (9th Cir. 2004). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Phillips v. General Motors Corp., 307 F.3d 1206, 1211-12 (9th Cir. 2002). Under the law, evidence, not speculation, is required.Rivera_v.NIBCO,Inc.,supra,at828.

There is no "good cause" to deny the Debtor the pre-trial discovery of documents and testimony in favor of protecting the creditor Deutsche Bank, and the balance of "the public and private interests to decide whether a protective order is necessary," weighs in clear favor of denial of the request for a protective order. see: Phillips, 307 F.3d at 1211. The creditor has not identified any of the requests as infringement on trade secrets or subject to privilege. Opposing counsel has only lashed out much speculation and voiced no substantive reason the debtor should be denied anything requested. That is, "if the documents are not among those which have 'traditionally been kept secret for important policy reasons' [grand jury transcripts and pre-indictment warrants], then 'the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.)' apply." Id. (internal citations omitted). Here, there is a strong interest in judicial accountability and education: the case has already attained a high profile among interested citizens, and the pre-trial discovery materials, and the Court's handling of the same, is of public importance.
Clearly, no trade secrets are at stake here. In this case, there is an incredibly high interest in

understanding the judicial process through discovery, briefing and hearings on the merits of the creditor's alleged harassments, and the public will be able to evaluate and hold accountable the judicial system from the very outset of this endeavor. In contrast, there is very little danger, and absolutely no evidence, that any pretrial discovery would be used for scandalous or other improper purposes.

Deutsche Bank's assertions are baseless and do not warrant the extreme relief sought.

## CONCLUSION

For all the reasons stated herein, the Creditor's Motion for Protective Order should be denied.

This the 25th day of March 2011.

/S/ Linda M. Tirelli
Linda M. Tirelli, Counsel for Debtor
One North Lexington Avenue, 11th Floor
White Plains, NY 10601
Phone (914)946-0860
Fax (914)946-0870
Email: WestchesterLegal@aol.com