UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION


In Re                         *   Case No. 10-51328(AHWS)
                              *
    TIFFANY M. KRITHARAKIS,   *   Bridgeport, Connecticut
                              *   March 17, 2011
        Debtor.              *
                              *
* * * * * * * * * * * * * * *


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ALAN H.W. SHIFF
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:              LINDA M. TIRELLI, ESQ.
                             Law Offices of Linda M. Tirelli
                             The Gateway Building
                             1 North Lexington Avenue, 11th fl.
                             White Plains, NY  10601

For the U.S. Trustee:        HOLLEY L. CLAIBORN, ESQ.
                             Office of the United States Trustee
                             The Giaimo Federal Building
                             150 Court Street, Room 302
                             New Haven, CT  06510

For Deutsche Bank            MARTHA CROOG, ESQ.
 National Trust Co.:         JONATHAN KAPLAN, ESQ.
                             The Brownstone
                             190 Trumbull Street, 2nd floor
                             Hartford, CT 06103

                             THOMAS A. CONNOP, ESQ.
                             Locke, Lord Bissell & Liddell, LLP
                             2200 Rose Avenue, Suite 2200
                             Dallas, TX  75201

Court Recorder:              MS. SUJATA RAI

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1              (Proceedings commenced at 2:25 p.m.)

2              THE CLERK:  On page 15 and 16, Tiffany

3  Kritharakis.

4              THE COURT: 15?

5              THE CLERK:  15 and 16.

6              THE COURT:  All right.  Let's have the

7  appearances.  We'll start with you, ma'am.

8              MS. CROOG:  Yes, for the record, Your Honor,

9  Attorney Martha Croog for the creditor, Deutsche Bank.

10             THE COURT:  Croog?

11             MS. CROOG:  Croog, C-R-O-O-G.  Martha Croog.

12             MR. CONNOP:  Good afternoon, Your Honor.  My name

13 is Tom Connop. I'm with the Dallas law firm Locke, Lord,

14 Bissell & Liddell. I've moved for admission pro hac vice as

15 counsel for Deutsche Bank as well.

16             MR. KAPLAN:   Jonathan Kaplan, also for Deutsche

17 Bank, Trustee.

18             THE COURT:  Any objection to Mr. Connop -- Connick

19 is it?

20             MR. PAUL:  I'm sorry, Your Honor.  It's Connop, C-

21 O-N-N-O-P.

22             MR. KAPLAN:   No objections were filed, Your

23 Honor.

24             THE COURT:  All right.  Mr. Connop, you're

25 welcome.  All of you are for Deutsche Bank.

1              MS. CLAIBORN:  Good afternoon, Your Honor. Holley

2     Claiborn for the U.S. Trustee.

3              MS. TIRELLI:  Good afternoon, Your Honor. Linda

4     Tirelli on behalf of the debtor, Ms. Tiffany Kritharakis.

5              THE COURT:  So perhaps the best way for me to

6     start with the matters that are on, and there are several,

7     is to look at the motion for a Rule 2004 Examination.

8              Is that the logical place to start?

9              MR. KAPLAN:  Yes, it is, Your Honor.

10             THE COURT:  All right.  The bank wants to examine

11    under 2004 --

12             MR. KAPLAN:   No, this is actually the U.S.

13    Trustee's motion to exam --

14             THE COURT:  The U.S. Trustee wants to --

15             MR. KAPLAN:   -- the creditor.

16             MS. CLAIBORN: Correct.

17             THE COURT:  Okay.  There was a 341 meeting in this

18    case?

19             MS. CLAIBORN: Some time ago, Your Honor.

20             THE COURT:  So you want a 341 --

21             MS. CLAIBORN: No, we would like --

22             THE COURT:  I mean, you would want a 2004.

23             MS. CLAIBORN: Correct.

24             THE COURT:  And did you file a subpoena -- did you

25    serve a subpoena to bring records?

1      MS. CLAIBORN: No, Your Honor.  We are here on the

2  United States Trustee's motion to -- for permission to

3  conduct a 2004 exam.

4      THE COURT:  Why do you -- those are usually done

5  without a court order.

6      MS. CLAIBORN: They are done without a court order

7  ordinarily, Your Honor, but as Your Honor may be aware this

8  type of discussion is happening across the nation and in

9  fairness to the creditor, to give them a voice, to air

10  whatever is it that they want to air with the court, the

11  U.S. Trustee determined that it was appropriate to ask the

12  court for a hearing to consider the request for the 2004

13  Exam.  So we have done that.

14      THE COURT:  Is there an adversary proceeding, or

15  will be there an adversary proceeding in this?

16      MS. CLAIBORN: There is no current pending

17  adversary proceeding that involves the United States Trustee

18  and until we obtain the discovery that we're looking for, by

19  virtue of the 2004 Exam and a document request accompanying

20  that, I can't answer that question as to whether or not

21  we'll be proceeding with anything.

22      THE COURT:  Is there a basis upon which a 2004

23  Examination is --

24      MS. CLAIBORN: Yes.

25      THE COURT:  -- anybody opposing it?  You're

1   opposing it?  Who's --

2            MS. TIRELLI:  No, Your Honor.

3            MR. CONNOP:  We are opposing it.

4            MS. TIRELLI:  The debtor supports --

5            THE COURT:  You don't want a 2004 Exam?

6            MR. CONNOP:  We do not.

7            THE COURT:  Why not?

8            MR. CONNOP:  Well, for one thing, Your Honor, and

9   the primary thing is that the United State's Trustee's

10  professed basis, that is, the situation surrounding a

11  promissory note, a copy of which was attached to the proof

12  of claim, causes them some concern or curiosity.

13            Prior to the setting of this hearing, Your Honor,

14  we offered to produce to the United States the original

15  promissory note, which has already been produced to the

16  debtor.

17            Along with that original promissory note are also

18  two original allonges that place title and ownership to that

19  note in our client, Deutsche Bank, as trustee for -- I

20  always foul this up.  I think it's the Soundview Home Trust

21  2006 OPTI1.  It's a syndicated, secure type mortgage trust.

22            We have the original promissory note here today

23  with us.  That seems to be the only issue that the U.S.

24  Trustee has cited as part of its -- as its grounds for

25  taking this 2004 Examination.

6

1          They are asking my client to produce a witness in

2    New Haven, Connecticut, at a cost that we estimate to exceed

3    $20,000.

4              THE COURT:  Wow.  Why is that?

5              MR. CONNOP:  Why would the cost be that much?

6              THE COURT:  That's right?

7              MR. CONNOP:  Having to travel from Jacksonville,

8    Florida.  They're going to have to prepare for an

9    examination --

10             THE COURT:  They'd have to prepare for it wherever

11   it is.

12             MR. CONNOP:  I understand that.

13             THE COURT:  The fact that it's in New Haven

14   doesn't add thousands of dollars to it, except for the

15   transportation.  And going to Jacksonville, Florida can be

16   done for significantly less than $20,000.

17             MR. CONNOP:  Your Honor, taking it in

18   Jacksonville, Florida would the appropriate place to take it

19   --

20             THE COURT:  Taking it in New Haven wouldn't add

21   tens of thousands of dollars, or $20,000.

22             MR. CONNOP:  Well, Your Honor, first of all, the

23   predicate on which the U.S. Trustee seeks to take the

24   examination has no foundation.

25             We have the note. I have it here.  It is an

1    original note.  It is an original allonge.  Deutsche Bank is

2    the holder of this indebtedness.

3         Deutsche Bank filed a proof of claim and that is

4    the only basis in which this 2004 is being requested.  There

5    is no point.

6         The U.S. Trustee must show good cause. It must

7    show it has a claim or that it will suffer undue burden or

8    hardship if it is deprived of this examination.

9         There is no claim.  There is no evidence which

10   must be proffered by the United States Trustee in order to

11   conduct this examination.

12        The only evidence before the court would be this

13   promissory note, the proof of claim filed by Ms. Croog's

14   office, which attaches the allonges and the affidavit, or

15   declaration from Elizabeth Bolton, a representative of the

16   mortgage servicer, attesting to the cost and burden

17   associated with it.

18        Any subpoena issued by this court, Your Honor,

19   pursuant to the request, if an order is issued, is governed

20   by Rule 45(c)(3)(A).

21        It cannot compel a person to attend a deposition

22   or examination more than 100 miles from where that person

23   resides, does business or regularly transacts business.

24        It must be quashed and hence, it really shouldn't

25   be issued.

1          THE COURT:  Has it issued already?

2          MR. CONNOP:  No, it has not.

3          THE COURT:  Okay.  Are you finished?

4          MR. CONNOP:  On that point, Your Honor, yes.

5          THE COURT:  All right.

6          MS. CLAIBORN: Your Honor, if I could give the

7   court some background as to why we're here and I think

8   Attorney Tirelli would probably like to do the same.

9          In broad brush, this case started on June 10th,

10   2010.  On July 28th, 2010, Deutsche filed a proof of claim

11   asserting a debt of approximately $336,000.  A proof of

12   claim was assigned -- was executed by a Lawrence Buckley,

13   who is out of Texas.

14          The only document attached to that proof of claim

15   was a mortgage between the debtor and an entity called MAC

16   mortgage.

17          The proof of claim was purporting to allege a debt

18   that is due to Deutsche.  Yet, the accompanying document

19   doesn't reference Deutsche whatsoever.

20          Thereafter Deutsche filed an objection to the

21   debtor's plan in this case and thereafter the debtor filed

22   an objection to the proof of claim filed by Deutsche.

23          Then in November of 2010 Deutsche filed an amended

24   proof of claim and this time it added all sorts of documents

25   to it in support of its claim that it was owed money.

1          It added the original -- sorry.  The original

2     note, the mortgage and then the assignments and allonges

3     purportedly connecting the debt and the mortgage to

4     Deutsche.

5          The issue that brings us here today is that there

6     are some inconsistencies in those documents and that's what

7     the U.S. Trustee would like to examine a representative of

8     Deutsche about and understand how it came to be that we

9     first filed a proof of claim with no documentation connected

10    to Deutsche, then we filed one that has a connection to

11    Deutsche but there are issues.

12         The issues that are highlighted in our motion for

13    a 2004 Exam are that you have an allonge purporting to

14    convey the right to collect this note from option one to --

15    actually option one, then known as San Canyon, to Deutsche

16    back in June, 2010 -- June 11, 2010.  This is an assignment

17    of mortgage.

18         This assignment of mortgage, however, is effective

19    as of May 1st, 2005.  So there's a little over a five-year

20    gap between those dates.

21         The issue with respect to the assignment of

22    mortgage is that there is a -- attached to our motion for a

23    2004 Exam an affidavit executed by a person known as Dale

24    Sugimoto, as president of San Canyon Corporation.

25         He executed this affidavit on March 18th, 2009 in

1   connection with a bankruptcy case pending in the Eastern

2   District of Louisiana known as *In Re Ron Wilson*, case no.

3   07-11862, in which he takes the position that as of 2008 San

4   Canyon and -- it was wholly-owned by that point by some

5   other entity called OOMC Holdings, LLC conveyed all its

6   interest and mortgages to American Home Servicing and then

7   changed it's name.

8           Therefore, we're concerned about the potential

9   that there was actually no authority for anyone to be

10  executing an assignment of a mortgage in 2010, because

11  according to this affidavit there's a concern that none of

12  these assets were owned in 2010.

13          THE COURT:  The bottom line here is you want to

14  examine him and the scope of 2004 is very wide.  However,

15  you want -- to the examination -- the deponent to bring

16  records with him.

17          That brings in Rule 9016.  9016, of course, is

18  Rule 45 of the Federal Rules.  If you file a subpoena --

19  they're not going to do it without a subpoena.

20          If you seek those documents, you'll have to

21  subpoena, they'll move to quash and the motion to quash may

22  succeed because you're trying to do it up here rather than

23  down there.

24          MS. CLAIBORN:  Let me address that point, if I

25  could.

1          Our motion, as filed, did seek examination to be

2     conducted here in Connecticut at our office in New Haven.

3          After we filed the motion we had discussions with

4     Attorney Connop and explained to him that we would be

5     willing to discuss conducting the examination at a mutually

6     convenient location, and we did not rule out Florida.

7          At this point, the U.S. Trustee is not ruling out

8     Florida as a possible place to conduct this deposition --

9     I'm sorry, examination.

10         We also think that it might be appropriate to see

11    if we could combine the discovery that -- in terms of having

12    a deposition and a 2004 Exam on the same day that the debtor

13    wants to conduct so there will be less of a burden on

14    Deutsche having to appear more than once.

15         THE COURT:  I've got nothing to work with right at

16    the moment.  You want the exam.  The examination is very,

17    very broad.  You're likely to have the right to examine.

18         That isn't enough under these circumstances.  What

19    you need is documents which will inform the examination.

20         MS. CLAIBORN:  That is correct, Your Honor.

21         THE COURT:  They're going to oppose the exam --

22    the subpoena requiring the production of subpoena documents

23    in New Haven.  You've tried to work it out. You haven't

24    succeeded.

25         So now you're going to be stuck with serving the

1       subpoena where it can be served.

2               MS. CLAIBORN:  Your Honor, I would like the

3       opportunity to do that.

4               THE COURT:  Who's stopping you?

5               MS. CLAIBORN: It's Deutsche's position that we

6       have no standing whatsoever to ask this court to authorize

7       us to --

8               THE COURT:  Oh, okay.

9               MS. CLAIBORN:  -- conduct a 2004 Exam.

10              THE COURT:  All right.

11              MS. CLAIBORN: And I also would like to take the

12      opportunity to say that well, once -- hopefully, the court

13      would agree to authorize the 2004 Exam that we would issue a

14      subpoena that complies with the rules and ask for documents

15      that are appropriate to the area of inquiry which we have

16      expressed here.

17              THE COURT:  Okay.

18              MS. CLAIBORN:  The opposition of Deutsche that

19      this is not a possibility whatsoever under any circumstances

20      is not something that's been supported by recent case law. I

21      don't know if Your Honor's had a chance to look at the reply

22      brief that we filed on Monday.

23              THE COURT:  I'm familiar with the law on 2004

24      Examinations.

25              MS. CLAIBORN: There are cases that have been

1    coming down across the country that have sided with our

2    position that the U.S. Trustee does indeed have standing to

3    conduct a Rule 2004 Examination and it's appropriate for

4    U.S. Trustees to conduct these sorts of examination because

5    of its watchdog responsibilities and its obligation to

6    protect the integrity of the bankruptcy system.

7           So, Your Honor, we are simply seeking the

8    opportunity to examine Deutsche as to how it is that they

9    became the owner of the note and how it is that they are

10   seeking to enforce it by virtue of the chain of ownership,

11   and how they came about to filing a proof of claim that

12   first didn't have any documentation and now has

13   documentation that has questions.

14          THE COURT:  What I -- I'm going to address that

15   and I'll probably write on it, whether or not this comes --

16   whether your motion for permission to take a 2004

17   Examination should be granted or not, I'll give you a

18   decision on that, but that, without the subpoena, is of

19   little value to you.

20          So I would like to do it all at once.  If you're

21   going -- if you're telling me you want to subpoena the

22   documents in accordance with Rule 45, then that solves that

23   piece of the —

24          MS. CLAIBORN: Your Honor, I think, however, given

25   the lack of an existing contested matter and the lack of an

1    adversary proceedings, I don't have the ability to issue a

2    subpoena unless I have first been given the opportunity to

3    exam under Rule 2004.

4              THE COURT:  I don't know. I don't read it that

5    way. I think Rule 2004, which brings into play subpoenas

6    under Rule 9016, there's no reason to take them in tandem.

7              I could take them all up at once and I have been

8    doing that on 2004 Examinations.  Usually people do it for

9    the examination to be done in this district.  Most of the

10   2004 Examinations involve the examinations in this district.

11   This one appears to implicate Florida.

12             So I believe that it's a fair reading of Rule

13   2004(c) and that's the way I read it, in any event, that you

14   can have the examination if I agree with you up to that

15   point.

16             As to the subpoena, you could have it so long as

17   you comply with Rule 9016, which implicates 45.

18             Yes, sir.

19             MR. CONNOP:  Very briefly, Your Honor, as I

20   indicated, the U.S. Trustee's burden is to show good cause

21   for this examination.

22             THE COURT:  Well, I don't think you're quite right

23   about that.  The Rule 2004, at least as it's interpreted in

24   the District of Connecticut, is very, very wide and unless

25   you could show me that they're harassing you or they could

1    get the information somewhere else, you're not going to

2    succeed on that.

3              You've made that point. I understand that point.

4    Go on to another one.

5              MR. CONNOP:  Well, Your Honor, I think we can show

6    them that they can get the information somewhere else.  This

7    is a public securitized trust.

8              There is a PSA on file in the circuit called

9    *Edgar*. They haven't assessed it.  That will establish the

10   basis for the terms describing the trust and as I said, Your

11   Honor, we have the note.  We have the allonges.  Their

12   authenticity is not an issue.  This is not impacting the

13   estate.

14             THE COURT:  You're incorrect about that. It does

15   impact the administration of this estate and the U.S.

16   Trustee is making that point and that point is well taken.

17             The bank is not going to be able to avoid the

18   scrutiny of what the U.S. Trustee claims is a potential

19   impropriety.  They have a right to search and see if that's

20   the case.

21             The debtor has been arguing that since this case

22   started.  So I think that the way to handle this is to take

23   on -- I'll decide this 2004 Examination under the

24   understanding that if I agree that you could take the

25   examination, that you have to satisfy Rule 9060 or Rule 45.

1          Is there anything else that needs to be addressed?

2          MS. TIRELLI:  Your Honor, I believe that the

3     creditor has also filed an objection to the debtor's motion

4     for discovery.  They're seeking an order of protection.

5          THE COURT:  Well, there hasn't been a subpoena

6     yet, so they can't get the protection with -- as for

7     something that hasn't happened yet.

8          MS. TIRELLI:  Well, Your Honor, I filed an

9     objection to the proof of claim, which makes it a contested

10    matter.

11         THE COURT:  Well, that's a different matter.

12         MS. TIrELLI:  Correct.

13         THE COURT:  That's not 2004. Now you're switching

14    gears to the -- you want to have a trial on the objection to

15    their claim and I believe the 2004 is intended, at least, to

16    ventilate that.  Let's take up the Rule 2004 first.

17         Now, the other way of doing this, of course, is to

18    not take up the 2004 Examination, but to take up the

19    contested matter, elevate it to the stature -- to the status

20    of an adversary proceeding, which I could do under Rule 9014

21    and manage the discovery under the Federal Rules of Civil

22    Procedure and the Federal Rules of Bankruptcy Procedure.

23         That an argument can be made that that's the

24    preferred way to doing it because those rules are far more

25    defined on the subject of disovery and usually courts take

1       the position that if there is an adversary proceeding, the

2       discovery should be done under that adversary proceeding and

3       not under Rule 2004.

4              THE COURT:  So that's why I asked some time ago

5       whether or not -- where there was an adversary proceeding.

6              Now you bring to my attention that they filed a

7       proof of claim and you have objected.

8              I could treat that as a contested matter and under

9       9014 employ the Federal Rules of Civil Procedure into the

10      part 7 --

11             MS. TIRELLI:  Your Honor, that's exactly what the

12      debtor is requesting.

13             We have served -- being that this was a contested

14      matter we have served a notice of deposition on the request

15      for protection of documents.

16             If this is going -- we would certainly agree to

17      have this elevated to an adversary proceeding.

18             THE COURT:  Well, it isn't elevating it.

19      Technically, it's a -- 9014 says that I can, on the request

20      of a party or even on the court's own motion can utilize the

21      rules under Part 7, which are the adversary proceeding rules

22      which bring in the Federal Rules of Civil Procedure.

23             MS. TIRELLI:  So, Your Honor --

24             THE COURT:  So that's the direction we should go

25      and -- there's if some logic to that then U.S. Trustee would

1    defer to the contested matter, and I don't want to do it in

2    parallel tracks, have both the U.S. Trustee and the

3    adversary proceeding going ahead at the same target because

4    I think the target can be reached under the objection to the

5    claim.

6          MS. CLAIBORN: Your Honor, I don't quibble with the

7    idea that there's a certain nucleus of facts that are

8    central to the debtor's dispute and central to the U.S.

9    Trustee's area of inquiry.

10          My suggestion I think the night before was that if

11   the court were to agree to authorize us to conduct a Rule

12   2004 Exam that we could conduct it on the same day --

13          THE COURT:  Well, I could do it this way.

14          If the litigation involving the proof of claim

15   comes up and there is a deposition that is scheduled which

16   includes a deposition in Florida with the production under -

17   - that's permissible under Rule 45 subpoena rules, the U.S.

18   Trustee can intervene, or seek to intervene and we could do

19   it all in one package.

20          The 2004 path, in my view, should yield to the

21   contested motion path and the U.S. Trustee's interest in

22   this, it seems to me, is going to be duplicative of the

23   interest of the creditor to -- of the debtor to claim that

24   the bank did something that the debtor claims shouldn't have

25   been done or -- well, you can get into the inquiry about the

1    legitimacy of the paper.

2              MS. CLAIBORN: I certainly couldn't rule out that

3    we could come to the same conclusion after the fact finding

4    process that there if a problem.

5              The U.S. Trustee though has a different focus than

6    perhaps the debtor does in this particular case --

7              THE COURT:  What's the U.S. Trustee's focus?

8              MS. CLAIBORN: Your Honor, I couldn't say what that

9    is until we get to the part where we understand what

10   happened.

11             THE COURT:  Well, then when you find out what

12   happened by the discovery then you could answer the

13   question.

14             MS. CLAIBORN: We just want the opportunity to ask

15   the questions --

16             THE COURT:  I'm going to hold off on that because

17   I think that now I see that there's going to be a contested

18   matter which is going to ask the questions.

19             You could look at -- you could attempt to

20   intervene if you wish. If you choose not to, you are

21   standing next to the debtor's attorney and I assume that she

22   would not be adverse to sharing her discovery with you.

23             I don't think the U.S. Trustee, or at least I

24   haven't heard you tell me that you have an independent

25   interest in this.

1          It may be that there has been -- there will be a

2     basis for you to claim and I don't suggest that for a

3     second, but there may be a basis for you to claim that there

4     is some behavior or conduct that would be of some interest

5     to the U.S. Trustee's office, but one of the things 2004

6     doesn't allow is a fishing expedition.

7          So I think the best way to handle is to do it

8     through the route of the contested matter. Let Ms. Tirelli

9     seek discovery under Rule 9014.

10          MS. TIRELLI:  Your Honor, I have and it was met

11     with a motion for a protective order, which is why we're

12     here today.

13          THE COURT:  Okay.

14          MS. TIRELLI:  So obviously you're denying that

15     motion --

16          THE COURT:  I guess I've heard the protective

17     order, but they say you're not entitled to the information.

18          MS. TIRELLI:  We're not entitled to the

19     information that we've requested, Your Honor.

20          THE COURT:  What have you requested?

21          MS. TIRELLI:  Well, I've requested the deposition

22     of a 309(b)(6) witness from Deutsche Bank to explain the

23     documents.

24          THE COURT:  Okay.

25          MS. TIRELLI:  I've explained a number of documents

1     also that I was not able to obtain online and after looking

2     at this matter further I do question the validity and the

3     authenticity of the documents that were produced.

4            The allonges that suddenly appeared after a

5     certified copy of the note was already produced are not

6     attached to that note.  That note remains unendorsed.

7            The assignments of mortgage suddenly appear and

8     the dates just don't match up and again, they're signed by

9     parties that I don't believe had authority to sign them.

10           I did bring this to the U.S. Trustee's attention

11    because I am suspecting fraud here and that is --

12           THE COURT:  Well, maybe you ought to refer this to

13    the Department of Justice -- the part of the Department of

14    Justice served by the U.S. Attorney's Office.

15           MS. TIRELLI:  Absolutely, Your Honor, and I

16    believe the Attorney General perhaps as well, and I'm also

17    bringing it to the court's attention.

18           But we do seek discovery to understand what the

19    documents are and where they came from.

20           The creditor is, in fact, a securitized trust and

21    it governed by pooling and servicing agreement, and that

22    pooling and servicing agreement's conveyance provisions are

23    very clear as to the chain of transfers that must take

24    place.

25           THE COURT:  All right.  Look it. I don't have to

22

1  decide that at this point.  Let me take it a bit at a time.

2  30(b)(6), you've declined to name somebody to be deposed?

3          MR. KAPLAN:   Yes, Your Honor.

4          Right now at this current juncture with the note

5  that is right in front of us right here, and I would like

6  you to inspect, if you'd wish,  we can go get a foreclosure

7  on this property.

8          Under Connecticut law regardless of the assignment

9  of mortgage issue --

10          THE COURT:  And in spite of bankruptcy law you

11  can?

12          MR. KAPLAN:   Excuse me?  Not under bankruptcy

13  law, but we're saying under Connecticut foreclosure law --

14          THE COURT:  But you don't have the Connecticut

15  foreclosure law as your problem.  What you've got is a

16  bankruptcy case.

17          MR. KAPLAN:   Yes, we do, Your Honor.

18          THE COURT:  So under a bankruptcy case you could

19  be required to name a witness and they're entitled --

20  bankruptcy law and the state law don't always jive.  They

21  often don't.

22          MR. KAPLAN:   Yes, Your Honor.  But what this all

23  goes back to is the contested matter over the objection to

24  the proof of claim and this is all based around the chain of

25  title issues and whether an amended proof of claim that

1    contained the fully chain of title included the alonges to

2    the current --

3           THE COURT:  Mr. Kaplan, there is going to be a

4    trial and it's going to be in this courtroom, and you're

5    probably going to be standing right where you are now, but

6    there's going to be a trial.  They're entitled to discovery

7    on that trial.

8           They have -- you filed a proof of claim.  They've

9    objected to it. This is the court that has the jurisdiction

10   to decide that objection to a claim in bankruptcy case.

11          MR. KAPLAN:   Yes, Your Honor, but the additional

12   discovery that's requested is unduly burdensome because

13   discovery was already provided to the debtor on multiple

14   occasions.

15          They filed a QWR under the Real Estate and

16   Settlement Practices Act, they -- excuse me.

17          They came to our office to inspect the note in

18   person and the only issue that could -- that they could come

19   up with was the fact that the staples holes in the left hand

20   corner are no longer stapled with the allonge.

21          THE COURT:  That may be very significant.

22          MR. KAPLAN:   It may be, Your Honor, but the point

23   is that the discovery is not necessary to answer the

24   question on the objection.

25          THE COURT:  Well, it certainly isn't for you to

1   decide whether it's necessary. They think it's necessary.

2          They think there's fraud here and you're saying

3   forget about it and we've given you what we're going to give

4   you and you ought to be satisfied with that.

5          MR. KAPLAN:   Yes, Your Honor.  We gave documents

6   that would -- appropriate to answer the question of the

7   statement of title -- excuse me -- the chain of title and

8   the appropriateness of going on a fishing expedition into 16

9   different topics for the deponent to answer and 17 different

10  topics of --

11         THE COURT:  What if there were 117 topics?  Is

12  that -- is the number of topics the problem, or is it the

13  substance of what they're asking for?

14         MR. KAPLAN:   It's the substance of what they're

15  talking about, Your Honor.

16         THE COURT:  So what are they asking for that

17  they're not entitled to?

18         MR. KAPLAN:   Well, first of all, Your Honor, they

19  ask for a true and legible copy of the promissory and

20  mortgage --

21         THE COURT:  Should they not have that?

22         MR. KAPLAN:   They already had it and they've

23  already inspected it, Your Honor. They --

24         THE COURT:  Wait. Hold it. Don't go any further

25  than that?  Do you have it?

1          MS. TIRELLI:  Well, Your Honor, I did, in fact --

2     I found -- see it --

3          THE COURT:  Do you have it?

4          MS. TIRELLI:  -- and the allonges are not

5     attached.

6          THE COURT:  Do you have it?

7          MS. TIRELLI:  I photographed them. I would like to

8     have a double sided, color copy of all the documents in

9     there.  But I'm satisfied with the photographs that I have

10    for now.

11         I did, in fact, inspect  and, again, the allonges

12    are not attached to the note.  The assignment of mortgage,

13    the two of them, do not make any sense in the context of --

14         THE COURT:  So what are you looking for that you

15    don't have?

16         MS. TIRELLI:  At this point, Your Honor, I need to

17    speak to a witness to understand where these assignments of

18    mortgage came from because they make absolutely no sense

19    within the context of the pooling and servicing agreement.

20         THE COURT:  And how are you going to get that?

21         MS. TIRELLI:  Well, by serving a notice of

22    deposition to seek a 30(b)(6) witness to piece this all

23    together for us.

24         THE COURT:  Okay.

25         MS. TIRELLI:  And also I want to point out to the

1    court that AMSI, the American Home Mortgage Servicing,

2    Incorporate is the purported servicer in all of this and

3    they're not represented.

4         But I think that the servicing of this loan is

5    also being called into question and I would like to have a

6    30(b)(6) witness from AMSI as well.

7              THE COURT:  Well, have you sought that?

8              MS. TIRELLI:  I was met with the motion for a

9    protective order --

10             THE COURT:  Did they represent that organization?

11   Does the bank represent that servicing, or is that an

12   independent agent?

13             MS. TIRELLI:  Well, Your Honor, there are two

14   separate entities.

15             THE COURT:  Okay.

16             MS. TIRELLI:  So I will -- all right. I will just

17   serve that on AMSI, then --

18             THE COURT:  Well, that sounds like the right place

19   to --

20             MS. TIRELLI:  Okay, Your Honor.  The point is well

21   taken. I will certainly do that.

22        It's gone back and forth where counsel has told me

23   they represent AMSI, they represent Deutsche Bank but not

24   appearance for AMSI has been filed.

25        So I'm note quite sure and perhaps they can put on

1    record exactly who they represent, because the interest of

2    those entities may be adverse.

3              THE COURT:  All right. So what do you not have

4    that you believe you're entitled to have?

5              MS. TIRELLI:  Testimony from somebody to explain

6    why this first proof of claim, which was signed by Lawrence

7    Buckley --

8              THE COURT:  All right. What documents don't you

9    have that you --

10             MS. TIRELLI:  Documents that are filed with the

11   SEC or should have been filed with the SEC that I'm not able

12   to locate --

13             THE COURT:  You can't get them from the SEC?

14             MS. TIRELLI:  Your Honor, no. I was able to locate

15   a copy of the pooling and servicing agreement, which I've

16   gone through.

17             THE COURT:  Well, the SEC are public records.

18             MS. TIRELLI:  Well, true, Your Honor.

19             But the problem is not all of the documents -- not

20   all of the ancillary agreements to this pooling and

21   servicing agreement appear to be filed with the SEC.

22             So I've asked them to locate these documents and

23   that's what I'm looking for.

24             THE COURT:  Well, have you asked for something and

25   the SEC has said we don't have it?

1          MS. TIRELLI:  No, Your Honor. I am asking the

2     party which should have this, which is Deutsche Bank --

3          THE COURT:  But you're looking for SEC documents.

4     And if you can get them from someone else, you ought to get

5     them from someone else.

6          In fact, the place to find out if there is those

7     documents is the place is where they're required by law to

8     be.

9          MS. TIRELLI:  Your Honor, yes, I understand that,

10    but they don't appear to be filed online with the SEC.

11         THE COURT:  So that --

12         MS. TIRELLI:  I'm asking for --

13         THE COURT:  Let's just do it one at a time, all

14    right?

15         MS. TIRELLI:  Sure.

16         THE COURT:  You've asked for documents and the SEC

17    says we don't have them.

18         Is that what you're telling me?

19         MS. TIRELLI:  What I'm saying is that I'm not able

20    to locate them online and I've actually called the SEC and

21    asked for assistance online and they said we're not able to

22    locate them either.

23         So are they perhaps misfiled under some schedule

24    in the SEC? It's hard to say.  There's many, many documents

25    files in the SEC pertaining to this trust.  I'm not able to

1   look at the documents that I'm seeking.

2         So I've asked Deutsche Bank to produce them and

3   that's what I'm looking for.

4         I'm also looking for life of loan transaction

5   history. I'm also looking for everything to do with the

6   servicing of this loan.

7         The assignment of mortgage that was signed on June

8   11th by a party that claims to be an officer of an entity

9   that no longer exists, let alone is in the servicing

10  business, I'd like to have a deposition of the party that

11  signed that and that document was produced by Martha Croog's

12  office.

13        MR. KAPLAN:   That's not --

14        MS. TIRELLI:  I'd like to know where it came from.

15        MR. KAPLAN:   That's not before the court, Your

16  Honor.

17        That party -- there's no deposition notice in

18  front of that party right now.

19        MS. TIRELLI:  I'll be more than happy to file a

20  deposition notice. I just want to convince the court --

21        THE COURT:  All right.

22        You're speaking a mile a minute here and what I

23  think you need to do is prepare for me a statement that

24  specifies what documents you don't have and the basis upon

25  which you believe you need them so we could find out.

1          Then I could ask Mr. Kaplan, has he given it to

2     you and if he says no and you can make a case for getting

3     them, then you'll get them.

4          If he hasn't given them to you, we'll take it up,

5     but first -- I can't write as fast as you can talk and I

6     guess I can get the transcript of all this, but I believe it

7     will be faster if you make a very clear, succinct statement

8     of what it is you need and you have asked for and have asked

9     for and haven't gotten.

10          But it seems to me at the very least you're going

11     to be ordered to produce a 30(b)(6) witness. Make up your

12     mind to that.

13          MR. KAPLAN:  Your Honor, real quick.  As Attorney

14     Tirelli indicated before, the issue with the note appears to

15     be the affixing of the allonges to the note.

16          THE COURT:  Mr. Kaplan, I want you to stop talking

17     and I want you to listen to what I'm telling you.

18          You're going to produce a 30(b)(6) witness. I'm

19     going to order you to do that.  And we'll take it up from

20     there as to how far they could go with that witness.

21          Any protection you need with respect to that

22     witness we'll find out about and I'll make rulings on it.

23     But you've got to designate somebody.

24          MR. KAPLAN:   Okay.

25          MS. TIRELLI:  Your Honor, I do have a copy of the

1    documents demanded for production, if Your Honor would like

2    to see that, if that perhaps would be the easiest way to go

3    through this or -- I don't know how the court wants to --

4              THE COURT:  Where is it? I mean, you're looking at

5    --

6              MS. TIRELLI:  I have it right here. I have a copy.

7              It's a copy of the notice of 30(b)(6) witness

8    addressed to Deutsche Bank, together with a request for

9    production of documents.

10             THE COURT:  Was it filed?

11             MS. TIRELLI:  This was served on the other side.

12   Yes, Your Honor.

13             THE COURT:  Was it filed?

14             MS. TIRELLI:  It was filed with the court -- yes.

15   I think it was actually filed as an attachment to the motion

16   for a protection order.

17             THE COURT:  What day was that?

18             MS. TIRELLI:  The date that it was filed? I

19   believe this was filed on January 14th, 2011 as an exhibit

20   to their motion for a protective order.

21             THE COURT:  And it was filed as a response to the

22   request for a protective order?

23             MS. TIRELLI:  No, Your Honor.

24             They filed they a motion for a protective order.

25   They attached to that my notice of deposition.

1          THE COURT:  Okay.

2          MS. TIRELLI:  Is that what you were asking, Your

3    Honor?

4          THE COURT:  Yes, I want to get a list -- can we --

5          MR. KAPLAN:   Your Honor, real quick, the debtor

6    did not file a objection to the motion for a protective

7    order, has not supplied the basis for the request and has

8    not indicated what the connection between any of the

9    requests are and the objection to the proof of claim that

10   you filed that limits it to three distinct issues.

11         I think it might be best served if Attorney

12   Tirelli submits a responsive pleading to the motion for a

13   protective order in order to clarify the basis each of these

14   requests.

15         THE COURT:  Well, I thought she said she did.

16         MR. KAPLAN:   She did not file --

17         MS. TIRELLI:  No, I didn't file a written

18   objection. I'm here today.

19         We were also here are on the 2004 -- my objection,

20   as I had said in the statement of support to 2004 motion was

21   that it would be highly repetitive of what the U.S. Trustee

22   has already said. These documents are very questionable.

23         THE COURT:  Okay. Let's see what progress, if any,

24   we have made.

25         One is I'm going to go the route of the litigation

1    over the proof of claim, and I'm going to defer temporarily

2    the 2004 controversy and it may be that the U.S. Trustee

3    will have out of the discovery procedures in the proof of

4    claim litigation what the U.S. Trustee needs.

5            If the U.S. Trustee could persuade me that there

6    is an independent interest that the U.S. Trustee has, then

7    I'll consider that.

8            If the real issue is whether or not it's a U.S.

9    Attorney issue, then I'll wait to hear from them.  But let's

10    start with the proof of claim.

11           As to the proof of claim, the rules of procedure -

12    - Federal Rules of Civil Procedure are fairly broad.

13    They're not quite as broad as the 2004 examination, but they

14    are fairly broad and they've been interpreted that way in

15    this district.

16           You are entitled to discovery facts that you need

17    in order to prosecute your objection to the proof of claim.

18           In the final analysis, it's their burden of proof

19    on the proof of claim, but you're opposing it. You're

20    entitled to discovery to support your opposition.

21           If the answer is they've given it to you, I'll

22    take that up.  If their answer is we haven't given it to you

23    and we don't want to, I'll take that up.

24           But in the first instance I need to know just what

25    it is that you want so that I could find from Mr. Kaplan

1    where he stands; you can't have it or we gave it to you.

2          MS. TIRELLI:  Well, Your Honor, again, to provide

3    Your Honor with a list of what exactly I've asked for, I'm

4    more than happy to -- if I may approach --

5          THE COURT:  No, I think what you need to is file

6    a piece of paper so it's docketed properly, that would be an

7    objection to the request for a protective order and then it

8    will be in a proper format for the record of this case.

9          How long is it going to take you to do that?

10         MS. TIRELLI:  Your Honor, I could have that done

11   inside a week.  I don't need more than a week to ten days.

12         THE COURT:  Okay.  So let's do it this way then.

13         You're going to have an opportunity to figure out

14   who your 30(b)(6) witness is going to be and I'll -- you

15   could either -- you filed a motion for 30(b)(6) already?

16         MS. TIRELLI:  Your Honor, I served a notice of

17   30(b)(6), but I can file a motion if Your Honor requires --

18         THE COURT:  No, no. You filed the papers asking

19   for a 309(b)(6).

20         MS. TIRELLI:  Okay -- Your Honor, yes, I can

21   certainly do that.

22         THE COURT:  You have done that and you've gotten

23   it. And you oppose it.

24         MR. KAPLAN:  Yes.

25         THE COURT:  Okay.  I'm going to order it. Naming

1    the person doesn't deprive you of any of your defenses.

2              I want to know who that person is and then we're

3    going to see what that person is going to be asked, what

4    that person is going to have to produce, if anything.  All

5    right? I think that will be the better way to do it.

6              So you're going to file your objection to the

7    motion of the bank for a protective order.

8              And you'll do that by next week -- I'll give you

9    till Friday, the 25th.

10             File it, serve the other side and two copies to

11   chambers.

12             So Ms. Santeo, I'm going to want you to match up

13   the motion for a protective order.  The motion for a

14   protective order response to a motion for --

15             MS. TIRELLI:  Well, the motion for a protective

16   order was to my noticing the depositions, which was part of

17   my contested matter being the objection to the proof of

18   claim.

19             THE COURT:  Okay.  So you noticed depos. You're

20   asking for a 30(b)(6) designation.  The notice of deposition

21   was opposed with a protective order.

22             And the opposition to the protective order is what

23   we're talking about.

24             MS. TIRELLI:  Correct, Your Honor. That's -- that

25   will be filed.

36

1          MR. KAPLAN:   Your Honor, may we have a

2    corresponding two weeks to respond.

3          THE COURT:  To their opposition?

4          MR. KAPLAN:   Yes, please.

5          THE COURT:  Sure.

6          MR. KAPLAN:   Thank you. I believe that's 4/8.

7          THE COURT:  Again, serve the other side and when I

8    say the other side, the U.S. Trustee isn't the other side,

9    but serve the U.S. Trustee as well.  Both  of you serve the

10   U.S. Trustee as well.

11         MS. TIRELLI:  Of course, Your Honor.

12         MR. KAPLAN:   And two copies for Your Honor?

13         THE COURT:  And two copies delivered to chambers

14   on the date that it's designated; 3/25 for the debtor and

15   4/8 for the bank.

16         MS. CLAIBORN: Your Honor, if I could address a

17   housekeeping matter.

18         THE COURT:  Wait. Not quite yet.

19         MS. CLAIBORN: Sure.

20         MS. TIRELLI:  Your Honor --

21         THE COURT:  Not you either.

22         MS. TIRELLI:  I'm sorry.

23      (Pause.)

24         THE COURT:  So then the next hearing I have is

25   going to be a hearing on an argument on the protective order

1    and I'll do that --

2            MR. KAPLAN:   It's currently scheduled for April

3    17th for the confirmation of the plan and our corresponding

4    objection.

5            THE COURT:  April 17th is a Sunday, so I think

6    that probably isn't correct.

7            How about the day before the 20th?  So I'll have a

8    hearing --

9            MR. KAPLAN:   Your Honor, what day is that?

10           THE COURT:  The 20th is a Wednesday.

11           MR. KAPLAN:   I believe that's the second day of

12   Passover. Can I -- I don't have my phone on so I can't check

13   my calendar.

14           But I believe the 19th and the 20th are the first

15   two days.

16           THE COURT:  I think it's going to have to go up to

17   May. How about May 3 at 2 o'clock?

18           MS. TIRELLI:  Okay, Your Honor.  That's May 3rd

19   for the motion for a protective order.

20           THE COURT:  Hearing on the motion for a protective

21   order. I will have gotten all the papers.

22           MS. TIRELLI:  Okay.  Your Honor, I --

23           THE COURT:  That will be at 2 o'clock.

24           MS. TIRELLI:  I anticipate serving additional

25   notices of deposition for additional parties, which I will

38

1    do also by Friday, just so that we can maybe have everything

2    addressed if they choose to file a motion for a protective

3    order against additional parties being deposed.

4              THE COURT:  Well, what we ought to then, if that's

5    going to be the case, I gather I'm going to hear objections

6    to everything.

7              Perhaps what we ought to do is a have a status

8    conference.  We'll get it all together and everybody doesn't

9    have to be coming back and forth.

10             Why don't I -- you're going to file your papers on

11   the 23rd?

12             MS. TIRELLI:  On the 25th, Your Honor.

13             THE COURT:  25th.

14             MS. TIRELLI:  Which is Friday. I'll try to get it

15   in sooner, if I can.

16             THE COURT:  Well, okay.  That isn't going to help

17   us very much, but why don't have a status conference -- we

18   could do it by telephone.  We don't have to have everybody

19   show up.

20             MS. TIRELLI:  Your Honor, I'm agreeable to a

21   telephone conference.  That would be fine.

22             THE COURT:  Good.  Maybe a telephone conference on

23   say the 4th of April to see what other depositions you've

24   sought with subpoena and you could tell me if you object and

25   then we'll try to work out the same schedule.

1              MR. KAPLAN:   Yes, Your Honor, and other parties

2       might be represented by separate counsel, so --

3              MS. TIRELLI:  Your Honor, if I could just have

4       something clarified because --

5              THE COURT:  Hold on a second.

6              MS. TIRELLI:  -- I've been told --

7              THE COURT:  Hold on a second, please.

8              If you serve other subpoenas and there are other

9       objections, you say that the objections will -- and I think

10      you're right -- be addressed by other people than the bank.

11             MR. KAPLAN:   It's hard to know right now, Your

12      Honor.  A speculative nature.  So that's all we can do.

13             THE COURT:  Why don't we see where we stand on the

14      4th.

15             I don't want people traveling to court

16      unnecessarily, so perhaps we could do it by telephone and

17      see who we need and then set it up so everybody is

18      inconvenienced as little as possible.

19             So we'll leave it the way it is now and I can't

20      tell what you're going to do, when you're going to do it or

21      what is going to be the response.

22             So we'll leave it the way it stands.  The 23rd --

23      the 25th of March for you to file your objection to the

24      protective order with a memo.

25             The bank will respond by April 8th.  A hearing on

1    May 3.  Anything else that comes up that muddies that

2    otherwise crystal clear pool we will address.

3              MR. KAPLAN:   One thing, Your Honor.  What time is

4    the conference call on April 4th?

5              THE COURT:  No, I'm not going to do it now because

6    I don't know what she's going to do.  You don't know what --

7    so we'll just have to see what happens.

8              MS. CLAIBORN: I just have one tiny request with

9    respect to housekeeping.

10              If Your Honor would consider continuing the U.S.

11    Trustee's motion for a 2004 Exam to May 3rd, I would like to

12    take an opportunity on that date to try and --

13              THE COURT:  Persuade me --

14              MS. CLAIBORN: -- address the argument about the

15    U.S. Trustee having a different approach and concern and

16    interest in this case than the debtor.

17              THE COURT:  I will do that. I'll continue it to

18    May 3rd and you can make your enhanced speech.

19              MS. CLAIBORN: Thank you.

20              THE COURT:  Anything else?

21              MS. TIRELLI:  So May 3rd is not a phone

22    conference. We're here --

23              THE COURT:  No, May 3rd at 2 o'clock I'm hearing

24    your argument on the papers you've filed.  Okay?  All right?

25              MR. CONNOP:  One quick question, Your Honor.

1          I don't know if the U.S. Trustee anticipates

2     additional arguments in support of her position. If so, I

3     can't anticipate what those would be.

4          Would she perhaps brief them a week ahead of time?

5          THE COURT:  Look it. I think my sense of this is

6     that the proper way to go about this is the parties in

7     interest, other than the United States, which has an

8     oversight interest and a crucial one, but as to the

9     litigants I think the cases support the view that the 2004

10    should yield to the part 7 series.  That's the way I want to

11    do that.

12         If you could persuade me that it is more efficient

13    that you have a legitimate independent interest and it would

14    be more efficient to do the discovery in connection with

15    that interest, I'll listen to you.  But that's what their

16    argument's going to be.

17         MR. CONNOP:  I understand, Your Honor.  Thank you.

18         MS. CLAIBORN: I just would like the opportunity to

19    discuss that further with Your Honor, and I think that's set

20    forth in our reply and counsel is on notice.

21         THE COURT:  Okay.  I think we've done business as

22    much as we're going to do, right?

23         MS. CLAIBORN: Thank you, Your Honor.

24         MR. KAPLAN:   Thank you very much.

25         MR. CONNOP:  Good afternoon, Your Honor.

1        MS. TIRELLI:  Thank you, Your Honor.

2        THE COURT:  All right.

3      (Proceedings concluded at 4:31 p.m.)

4      I, CHRISTINE FIORE, Certified Electronic Reporter and

5    Transcriber, certify that the foregoing is a correct

6    transcript from the official electronic sound recording of

7    the proceedings in the above-entitled matter.

8

9    *Christine Fiore*

10   _____April 19, 2011

11   Christine Fiore, CERT*D-410