UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION


In Re                        *   Case No. 10-51328(AHWS)
                             *
    TIFFANY M. KRITHARAKIS,   *   Bridgeport, Connecticut
                             *   May 3, 2011
        Debtor.             *
                             *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ALAN H.W. SHIFF
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:              LINDA M. TIRELLI, ESQ.
                             Law Offices of Linda M. Tirelli
                             The Gateway Building
                             1 North Lexington Avenue, 11th fl.
                             White Plains, NY  10601

For the U.S. Trustee:        HOLLEY L. CLAIBORN, ESQ.
                             Office of the United States Trustee
                             The Giaimo Federal Building
                             150 Court Street, Room 302
                             New Haven, CT  06510

For Deutsche Bank            MARTHA CROOG, ESQ.
 National Trust Co.:         JONATHAN KAPLAN, ESQ.
                             The Brownstone
                             190 Trumbull Street, 2nd floor
                             Hartford, CT 06103

                             THOMAS A. CONNOP, ESQ.
                             Locke, Lord Bissell & Liddell, LLP
                             2200 Rose Avenue, Suite 2200
                             Dallas, TX  75201

Court Recorder:              MS. SUJATA RAI

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 2:13 p.m.)

2               THE CLERK:  On page 23 and 24, Tiffany

3     Kritharakis.

4               THE COURT: I'll take the appearances first.

5               MS. CROOG:  For the creditor, Deutsche Bank

6     Trustee, Attorney Martha Croog.

7               MR. CONNOP:  Good afternoon, Your Honor.  Also for

8     Deutsche Bank Trustee, Tom Connop, C-O-N-N-O-P, Locke, Lord,

9     Bissell & Liddell in Dallas, Texas.

10              MR. KAPLAN:   Jonathan Kaplan, also for the

11    movant.

12              MS. TIRELLI:  Good afternoon, Your Honor. Linda

13    Tirelli on behalf of the debtor, Tiffany Kritharakis.

14              MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

15    Claiborn for the U.S. Trustee.

16              THE COURT:  All right.  There are two matters.

17    One is the U.S. Trustee's -- now, let me see.

18              One is a 2004 Exam by Deutsche Bank as the

19    trustee.  That's docket item 52 and the other is a response

20    by Attorney Tirelli.  Those are the only two matters I have.

21    Is that right?

22              MR. CROOG:  Yes, Your Honor.  It's the U.S.

23    Trustee's motion for a 2004 Exam and our motion for a

24    protective order.

25              THE COURT:  Well, let's see.  Motion for a 2004 --

3

1    yes.  I read it wrong.  Thank you.  I deferred that last

2    time. I'm still deferring it.

3           The issue I'm going to take up first is the

4    questions that were raised at the last hearing that need to

5    be considered.

6           The underlying question is an objection to a

7    claim.  The debtor asked for information.  The transcript

8    states that you asked for documents and the SEC says we

9    don't have them and I say is that what you're telling me and

10   then, but further on I say to Attorney Tirelli what I think

11   you need is to prepare for me a statement that specifies

12   what documents you don't have and the basis upon which you

13   need them so we could go forward.

14          And I thought that if we could get to the bottom

15   of that, that may well resolve the needs of the U.S.

16   Trustee's Office for a 2004 Exam.  That's how I felt about

17   it then and still do.

18          So the question is Attorney Tirelli was supposed

19   to have stated clearly and specifically what it was that you

20   claim you don't have and which you need to have in order to

21   support your claim that the bank's paper is defective.

22          You filed, I'm guessing, several hundred pages of

23   paper which don't, in my view, respond to that.

24          MS. TIRELLI:  Your Honor, if I may?

25          THE COURT:  Not quite yet, unless you're telling

1    me that this is resolved, then I won't look any further.

2         MS. TIRELLI:  Well --

3         (Pause.)

4         THE COURT:  The bank filed a motion for a

5    protective order objecting to deposition and designation of

6    a 30(b)(6), arguing that discovery isn't necessary and I

7    decided, as I mentioned -- I'm reading my notes -- I decided

8    that the government's -- the U.S. Trustee's 2004 Exam should

9    be deferred.

10        So the question still comes down, what is it you

11   say you don't have and that you need in order to support

12   your claim?

13        I have a document that you filed that entered on

14   April 8th, which is -- three, six -- there are like nine

15   items here.

16        I don't know -- I don't know whether they know

17   just what documents don't you have. I'll repeat it a third

18   time.  What documents don't you have which you say you need

19   to have in order to support your claim.  They need to know

20   that so they could respond.

21        They filed a reply but the reply was there's

22   nothing for us to reply to because you haven't given the

23   information that I ordered you to provide at the hearing

24   that was on April 20th.

25        MS. TIRELLI:  May I?

1          THE COURT:  Yes.

2          MS. TIRELLI:  Okay.  Thank you, Your Honor.

3          My understanding at the last hearing was that I

4    was supposed to respond to the motion for a protective

5    order, because I hadn't prior to that responded.  The U.S.

6    Trustee filed their response. I didn't file a response

7    because I felt it would have been repetitive.

8          So, in fact, what I did was what I thought the

9    court wanted me to, was respond to the motion for a

10   protective order, which is what you see here on the docket

11   as no. 7981 and 77. That's the dockets I have.

12         In my objection to the motion for a protective

13   order I do feel that I've given the court and all parties an

14   overview of exactly what it is that we're looking for.

15         THE COURT:  I don't want an overview.

16         MS. TIRELLI:  I --

17         THE COURT:  Let me say it again.  I'll read what I

18   have, or I just did read what I -- they don't want an

19   overview. They don't want a category of stuff.

20         MS. TIRELLI:  Understood.

21         THE COURT:  They want exactly what you need in

22   order to prove your claim.

23         MS. TIRELLI:  Okay. Your Honor, I have done that.

24   The documents no. 85 and no. 82.  It was also my

25   understanding that the court wanted me to reissue the -- my

1    request for documents, which is what I did.  I served by way

2    of subpoena a command for production of documents that I've

3    carefully reviewed to make sure I did not repeat anything

4    that I already had.

5              I served one on AMSI and I served one on the

6    creditor, Deutsche Bank. I listed the items.  I also

7    subpoenaed 30(b)(6) witnesses from each entity to testify to

8    a list of topics.

9              So the number -- the documents that I was

10   commanding for production are enumerated number 1 through

11   25, and that would be the -- document no. 82, which is the

12   subpoena that was served on Deutsche Bank, and that I

13   believe is no. 1 through 26 that is served on --

14             THE COURT:  Well, I don't have any of that paper,

15   I don't believe.

16             MS. TIRELLI:  I did, in fact, file, Your Honor,

17   with the court.  And I beg your pardon.  This is no. -- I

18   gave 28 items that are requested from AMSI.  25 items I've

19   requested from Deutsche Bank.

20             This claim was not filed by Amsi, but I'm a little

21   confused because it seems to me that Mr. Connop is

22   representing AMSI, and AMSI is American Home Mortgaging,

23   Inc. I don't mean to use an acronym without defining it.

24   Sorry about that.

25             But he's representing two entities and I believe

1    that AMSI is the purported servicer.

2           So there are some questions that I would need a

3    servicer to respond to and there are some answers that I

4    need from the party that actually filed the claim, which is

5    the trustee.

6           And what I got in response was a second motion for

7    a protective order, asserting this general privilege without

8    receiving a privilege log and also telling me that this is

9    overly burdensome.

10          Anything that I asked for, Your Honor, is not

11   available on the SEC.  There is, in fact, a pooling and

12   servicing agreement on the SEC's website, but it's not

13   signed.

14          So either -- I have no way of authenticating that

15   this is the current and most valid pooling and servicing

16   agreement or not.  So I'm looking for an executed copy.

17          THE COURT:  Executed copy of what?

18          MS. TIRELLI:  The pooling and servicing agreement.

19          THE COURT:  The what, again, agreement?

20          MS. TIRELLI:  I'm sorry.  The pooling and

21   servicing agreement because, again, the only copy I was able

22   to come across is unsigned.

23          THE COURT:  All right.  Do you have the pooling

24   and servicing agreement with the signature on it?  That's a

25   yes or no?

1          MR. CONNOP:  I think we can get it, Your Honor. I

2     can't answer it yes or no.

3          THE COURT:  Well, wouldn't you have it, since it's

4     something that you would need to have in order to enforce

5     the agreement?

6          MR. CONNOP:  No, Your Honor, because the pooling

7     and servicing agreement has nothing to do with the

8     authenticity or enforceability of the promissory note.

9          The pooling and servicing agreement deals with the

10    circumstances surrounding the issuance of securities that

11    are backed by debts and mortgages, of course.  And it

12    governs the relationship between Deutsche Bank, the trustee

13    for the trust, the trust, the custodian, depositor and the

14    like.

15         THE COURT:  Okay.  Get it.

16         MR. CONNOP:  I understand, Your Honor.

17         THE COURT:  How long will it take you to do that?

18         MR. CONNOP:  Your Honor, I'll make the request as

19    soon as I return -- actually, as soon as I get out of your

20    courtroom.  I can't tell you it will take a week, but we'll

21    do our dead level best to --

22         THE COURT:  Well, let me give you a deadline for

23    it because I think your people need to -- your people will

24    need to know what they're looking at.

25         This is -- why don't I give you three weeks to

1    come up with that.

2              MR. CONNOP:  Certainly, Your Honor.

3              THE COURT:  All right.  So by 5/24 -- I'll have a

4    -- I'm going to continue this hearing until 5/24 so you need

5    to have gotten it to Attorney Tirelli no later than -- and I

6    should say the day before that hearing, so I'll say the

7    23rd.

8              What else do you want?

9              MS. TIRELLI:  Well, Your Honor, again, there are

10   items that are enumerated, 25 items under one subpoena and

11   28 under the other.

12             THE COURT:  All right.  Let's go just to one of

13   them.

14             MS. TIRELLI:  Okay.

15             THE COURT:  I'm looking at docket no. 82.

16             MS. TIRELLI:  And that's the subpoena that was

17   directed to Deutsche Bank.

18             THE COURT:  Okay.

19             MS. TIRELLI:  Item no. 1 --

20             THE COURT:  Now you're talking about in the

21   Exhibit A definitions?

22             MS. TIRELLI:  Your Honor, yes. Just past that.  I

23   believe it's two pages after that you'll see documents

24   commanded for production.

25             THE COURT:  Documents -- now you've seen that,

10

1    right?

2              MR. CONNOP: Your Honor, may I speak?

3              THE COURT:  Sure.

4              MR. CONNOP:  We're not here on this document

5    today.  We're here on the debtor's notice of deposition

6    30(b)(6) that Your Honor continued back in March.

7              Mr. Tirelli is correct. I think the day of, or

8    right after we had our hearing, rather than provide the

9    court with the list that we thought we were going to get,

10   she served subpoenas duces tecum on American Home Mortgage

11   in Dallas and Deutsche Bank as trustee in California.

12             In sum total, today, Your Honor, Ms. Tirelli has

13   made approximately 71 separate document requests on these

14   two entities.

15             THE COURT:  Is that significant?

16             MS. TIRELLI:  In this case --

17             MR. CONNOP:  That's very significant.

18             THE COURT:  Why is that?

19             MR. CONNOP:  Because frankly, Your Honor, we don't

20   know how these materials, including the personnel files of

21   people who signed the documents, have anything to do with

22   whether or not Ms. Kritharakis is liable on a mortgage note,

23   or whether the mortgage note is enforceable.

24             THE COURT:  Okay. So the number itself isn't of

25   any significance. It could be 700 documents.  The question

Fiore Reporting and Transcription Service, Inc.

1    is are any of those necessary and which, if not all of them,

2    are.

3              MR. CONNOP:  That's correct.

4              THE COURT:  All right.  So we could go down each

5    one of those, document by document, and see whether or not

6    it is reasonably necessary for her, in the prosecution of

7    her claim, that you have bad paper.

8              MR. CONNOP:  Your Honor, I think we should -- we

9    would ask that we be directed to the 30(b)(6) Examination,

10   notice, which was the subject of today's hearing, and that

11   is docket -- well, our motion for protection is at docket 48

12   and the document is at docket 48-1, and that's what Your

13   Honor continued this here today on, and that's what we are

14   faced with, not knowing what counsel's need was for the

15   particular, in that case, 17 different document requests

16   that are before the court.

17             THE COURT:  I --

18             (Pause.)

19             THE COURT:   All right. I missed a page here and

20   you may be right. I'm still going to go back to the other

21   part. But there are more than the two items that I just

22   identified and they are separated by stuff -- other pages --

23   that's why I missed them.

24             If I start at the beginning of the documents on my

25   list today, 37 is an objection to a claim by Deutsche Bank

1   and by the debtor.

2          43 is a response.  47 is a motion for a protective

3   order by Attorney Kaplan on behalf of Deutsche Bank.  Then

4   there are the two that I mentioned; motion for an exam by

5   the U.S. Trustee's Office, which I'm deferring, so I don't

6   have to take that up, or the response to that.

7          So that leaves me with the three things that I am

8   going to address today.  Now the objection to the claim, the

9   response to the objection and the motion for a protective

10  order.

11         THE COURT:  It seemed to me the transcript of the

12  hearing, which I assume you have, the problem that I

13  identified last time it was clear -- at least it seemed to

14  me that you were saying to me it wasn't clear what it was

15  that the debtor claimed she didn't have but needed to have

16  in order to support her claim that your paper is defective.

17         So I ordered her to prepare a statement -- I'll

18  read it again. It's in the transcript -- that specifies what

19  documents you don't have and the basis upon which you

20  believe you need them, so the bank could go forward.

21  So that's one item I've got to deal with.

22         Attorney Tirelli says that she's done that.  Do

23  you agree she's done that?

24         MR. CONNOP:  No, Your Honor, I'm afraid I don't

25  agree that she's done it.  The addition of another 50 or so

1    topics and documents without an explanation of how these

2    relate to the question of enforceability of the endorsed

3    mortgage note is still a mystery.  The policies and

4    procedures of Deutsche Bank have nothing to do with this.

5         THE COURT:  If you're going to go on trial with

6    this and you're going to put a witness on the witness stand,

7    you're going to ask the witness questions and the questions

8    are going to involve documents, they need to know who that

9    witness is going to be, what that witness is going to say

10   and what documents were you relying on. Not a category, but

11   the documents.

12        Now some of them they believe you have, or you

13   could get.  You could get, they might argue, or perhaps I

14   raised it in response to something you said, you could get

15   it from the filings with the government.

16        You're telling me that that doesn't get to where

17   you need to go because you need signature pages because part

18   of your claim is that the signatures are forged.  A -- her

19   signature is forged.

20        MS. TIRELLI:  Not exactly, Your Honor.  The

21   pooling and servicing agreement does more than just sell

22   securities.  There's conveyance provisions.  The only way

23   this trust can possibly own this lump is if the terms of

24   that pooling and servicing agreement had been abided by.

25        That trustee cannot --

14

1        THE COURT:  Look it. Let's -- I'm not going to

2   micro manage this. I am going to say to you yet again, every

3   single piece of paper that you're going to rely upon in the

4   trial needs to be identified and needs to be shown to them,

5   even if it's something you believe they might have somewhere

6   in their records.  That shouldn't be hard. You're going to

7   have to prepare for trial.

8        MS. TIRELLI:  Agree.

9        THE COURT:  You can't just give them a topic.

10       MS. TIRELLI:  Well, Your Honor, I don't believe

11   I've just given them a topic.  I think the two subpoenas are

12   very clear in exactly what it is that I'm looking for.

13       THE COURT:  All right.  Show me.

14       MS. TIRELLI:  In my opposition to the motion for a

15   protective order I'm very clear in the totality of the

16   circumstances surrounding this case and exactly what my

17   issues are.  I've gone through great lengths and, Your

18   Honor, I did it immediately.  I got this all done within a

19   week of the last hearing to give them plenty of time.

20       THE COURT:  The issue isn't the way you're going

21   to respond to me is by sending a subpoena to them, which has

22   a list of things.  That isn't answering what I ordered you

23   to do.

24       MS. TIRELLI:  Okay.

25       THE COURT:  I am ordering you again to prepare a

1    piece of paper, or papers, that are going to say what your

2    evidence is and if you're claiming that your evidence is

3    documentary, that that is a document you don't have and you

4    want me to compel them to produce it.  That's not hard.

5              MS. TIRELLI:  No, Your Honor. It's not hard at

6    all.

7              I've asked for some basic documentation on --

8    including life of loan transactions --

9              THE COURT:  You're going to do what I told you to

10   do or you're not going to go anywhere with this trial.  I'm

11   not -- we're starting a fresh slate.

12             MS. TIRELLI:  Your Honor, just so I'm clear. You

13   want me to put down my requests and specify why I need each

14   document.

15             THE COURT:  I want -- no, this is what --

16             MS. TIRELLI:  I haven't gotten anything from them.

17   I haven't gotten a single piece of paper since the last time

18   we were here. I haven't gotten --

19             THE COURT:  But you --

20             MS. TIRELLI:  -- the name of a witness since we

21   were last here.

22             THE COURT:  Okay.  My turn now?

23             MS. TIRELLI:  I'm sorry.

24             THE COURT:  Prepare a statement that says my proof

25   is the following.  Your proof of your claim about your

1    rights to oppose their proof of claim.  That's what we're

2    here about, right?

3              MS. TIRELLI:  Your Honor, I filed an objection to

4    the proof of claim outlining exactly --

5              THE COURT:  I don't care what you have done up to

6    this time.

7              MS. TIRELLI:  Okay. I'm trying to understand --

8              THE COURT:  We have a freight train full of paper

9    in this case.

10             MS. TIRELLI:  Okay.

11             THE COURT:  All right?  So just to make it clear,

12    even if it's redundant, this is what I want you to do.

13             I want you to prepare a paper that will make it

14    clear just what it is your claim is, specifically, and how

15    you're going to prove it; by witnesses, by exhibits, by any

16    means, by admissions, by whatever you're going to do it.

17    They need to know exactly what it is.

18             MS. TIRELLI:  So I'm not requesting anything

19    further from them. I'm just going to list what I have or

20    what I need, or both?

21             THE COURT:  I want you --

22             MS. TIRELLI:  That's what I'm trying to

23    understand.  I'm not trying to be difficult, Your Honor. I'm

24    really not.  I'm trying to understand.

25             THE COURT:  I know you're not trying to be

1    difficult and neither am I.  I simply need to know, so that

2    it is clear to me and hopefully clear to the other side how

3    you're going to prove your case.

4         It can't be by, look at this document and lines 1

5    through 10, then look at that item and look at item 1

6    through 25 and look a third one and look at items 36, 37. I

7    want brand new a statement from you this is my claim and

8    this is how I propose to prove it.

9         Now if the way you propose to prove it is by a

10   document you don't have, that's column B.  And you'll be

11   asking for that.

12        Now that ought to make it pretty clear so that

13   when they come and ask for a protective order, I will be

14   able to evaluate it as to whether or not they're entitled to

15   a protective order.

16        We'll know what documents you're talking about,

17   whether they go off the target or they hit it right in the

18   center.

19        MS. TIRELLI:  Okay.  Your Honor, that sounds easy

20   enough. I'll do a column A and a column B.  What I have,

21   what I'm asking for to prove my claim.

22        THE COURT:  That would be what -- you've got it

23   upside down.  Let me do it just one more time, all right?

24        MS. TIRELLI:  Okay.

25        THE COURT:  A simple statement of what it -- how

1    you propose to prove your claim, your objection.

2              MS. TIRELLI:  Okay.

3              THE COURT:  I'm guessing that some of it is going

4    to be by witnesses, some of it's going to be with exhibits.

5              There may be other ways you're going to try to do

6    it. You need to say how you're going to prove your claim, by

7    what means, specifically what documents, identify the

8    document specifically and if you don't have the document

9    that you need, then you will identify the document that you

10   need and ask the court for an order commanding them,

11   compelling them to produce it.

12             That's how I think you ought to do it and that's

13   how I'm directing you to that.  Do you see any problem with

14   that?

15             MR. CONNOP:  No, problem and I don't want to

16   overlay complication on the process, Your Honor, but I think

17   that the one missing link that you mentioned at our last

18   hearing was why and maybe that's subsumed --

19             THE COURT:  I thought that was subsumed, but if it

20   wasn't subsumed, when I say what -- how are you going to

21   prove it and why you need it, that would be the why.

22             MR. CONNOP:  Thank you.

23             THE COURT:  Now, how long is it going to take you

24   to do that?

25             MS. TIRELLI:  Your Honor, I pretty much have all

1   of it, in terms of what I know I need and what I do have and

2   what I don't have.

3           THE COURT:  That translates --

4           MS. TIRELLI:  I guess about three weeks.

5           THE COURT:  All right.  That gets us down to the -

6   - what is it?  24th.

7           So get it to them on the 23rd, no later than the

8   23rd and when I have my hearing on the 24th I'll know

9   whether you -- Ms. Tirelli what she needs and she'll know --

10  and you'll know whether she has given you what she says

11  she's got to get.

12          MR. CONNOP:  I don't have the 24th --

13          THE COURT:  The 24th is a Tuesday. It's three

14  weeks from today.

15          MR. CONNOP:  Could we possibly have it the Friday

16  before so we'll have an opportunity to study it and be able

17  to respond?

18          THE COURT:  All right.  Then both sides need to --

19  you have to do the same thing.

20          MR. CONNOP:  I understand.

21          THE COURT:  Okay.  So the documents -- the papers

22  will be in each other's hands, certification of service

23  required, no later than the close of business on the 20th,

24  Eastern time.

25          MS. TIRELLI:  I'm sorry. Is that May 20th?

20

1          THE COURT:  May 20th.  I'll have a hearing on the

2     24th just to see how that compliance is played out.

3          MS. TIRELLI:  Your Honor, if I may, if I can't

4     have the 23rd, I actually need the following week, not the

5     20th.

6          THE COURT:  You want to advance everything a week?

7          MS. TIRELLI:  Yes. I have something that I cannot

8     -- it's a personal matter that I can't --

9          THE COURT:  I won't interfere with that, but that

10    puts us up against the Memorial Day weekend and it's not a

11    good travel time and it's --

12         MR. CONNOP:  And I'm sorry, Your Honor, but my

13    wife has me planned for vacation and she's done it nine

14    months ago.

15         THE COURT:  I wouldn't want you to win this battle

16    and lose that war.

17         MR. CONNOP:  Thank you.

18         THE COURT:  So if we put it down for the 7th of

19    June for the hearing, then June --

20         THE CLERK:  The 2nd you're not --

21         THE COURT:  Yes, the Second Circuit conference is

22    -- no, it looks like we're up to the 14th then.

23         MR. CONNOP:  I think that will work from my

24    perspective, Your Honor.

25         THE COURT:  Okay.

1           MS. TIRELLI:  So paper exchange by June 14th?

2           THE COURT:  No, the hearing is June 14th.  The

3    paper exchange, let's make that June 3rd.

4           MR. CONNOP:  Okay.

5           MS. TIRELLI:  And that's 2 o'clock on the 14th --

6           THE COURT:  The 14th.  Yes, this will be a long

7    matter. Let's do it then, right?  All right.  2 o'clock.

8           Now does -- what else do we need to do?

9           MR. CONNOP:  In an effort to streamline Your

10   Honor's docket, we did file motions for protection on the

11   two subpoenas that I think Your Honor had scheduled for the

12   19th.  Should we push this all off to that date?  This 14th

13   of June?

14          THE COURT:  Sure. Let's put everything over to

15   that date.

16          MR. CONNOP:  Okay.

17          THE COURT:  And you've objected to -- tell me that

18   again.

19          MR. CONNOP:  Ms. Tirelli served subpoenas on

20   Deutsche Bank in California for a deposition there and on

21   American Home Mortgage in Dallas for deposition there.  Each

22   asks for something -- over 20 categories of documents.

23          THE COURT:  Okay.

24          MR. CONNOP:  Many of them are similar to what were

25   asked for in this first round that we're here on today, but

1    there are some additional categories.

2            THE COURT:  All right.  And have you gotten a

3    response from that yet?

4            MR. CONNOP:  Your Honor, as a matter of fact, the

5    response to a motion to quash in Dallas was due yesterday

6    and there was no response filed, but we do have a motion for

7    protection, which I -- perhaps Ms. Tirelli was planning --

8            THE COURT:  Why don't I have the response to your

9    protective order hearing on June 14th and the response to

10   your motion on June 3rd, the same --

11           MR. CONNOP:  The response due -- the papers.

12           THE COURT:  Yes.  Yes.

13           MR. CONNOP:  Okay.

14           THE COURT:  So there's a paper response due on

15   three things now and a hearing on three things on June 14th,

16   right?

17           MS. TIRELLI:  I'm sorry.  On three things?  It's

18   on --

19           MR. CONNOP:  Your two subpoenas, plus this.

20           MS. TIRELLI:  Okay.

21           THE COURT:  Well, then there's also your -- you've

22   got to furnish some document --

23           MR. CONNOP:  I've got to get her the PSA.

24           THE COURT:  And that PSA -- do we have a date for

25   that?

1          MR. CONNOP:  I think the third -- oh, we're back

2     on 5/24.

3          MS. TIRELLI:  5/24, Your Honor.

4          THE COURT:  Or we could make it all June 3rd.

5          MR. CONNOP:  I'll shoot for the 5/24.

6          THE COURT:  I'm saying June 3rd is the latest day.

7     You could give it to her this afternoon, if you like.

8          MR. CONNOP:  Not likely, but I appreciate the

9     offer, Your Honor.

10          THE COURT:  Okay.

11          MS. TIRELLI:  Your Honor, just --

12          THE COURT:  What else?

13          MS. TIRELLI:  I was going to say, as an ancillary

14     matter, the other items that I was asking for -- for

15     example, I was given the transaction history with a whole

16     bunch of codes in it.  One thing that I was asking for very

17     simply was the key to those codes.

18          I'm just asking that perhaps they'd be willing to

19     provide sooner rather than later, so I can have my friends

20     in accounting take a look at the accounting.

21          MR. CONNOP:  We would need to know why she needs

22     that for this particular matter.

23          MS. TIRELLI:  It's my client's account.  They're

24     claiming she owes him money.

25          THE COURT:  You don't need to know.  It's pretty -

1    - discovery is wide in the federal rules, as you know.  She

2    needs to have some -- she's looking for misconduct. Often --

3    it may or may not be there.  She has a right to suggest it's

4    there.

5         Sometimes there isn't a bright path that leads to

6    it, so she's entitled to some flexibility.  She ought to get

7    those codes.

8         MR. CONNOP:  Let me see with Ms. Tirelli what

9    codes it is she would like to have.

10        THE COURT:  Well, you ought to agree with --

11   before you leave so that we know what we're doing, because

12   the next time I see you folks ought to be June 14th.

13        MR. CONNOP:  Okay.

14        THE COURT:  And what I want now is a scheduling

15   order that is going to have all of this in it, the

16   certification of service, and I gather notice need not be

17   given to anybody other than the people here.

18        MR. CONNOP:  Okay.

19        THE COURT:  Okay.  So if you give me that order,

20   then we'll close the final loop on the codes and the -- if

21   you're asking for a code so your forensic accountant could

22   understand the calculations, I believe that's a reasonable

23   request.

24        MS. TIRELLI:  I actually listed them specifically

25   in item 2B on each of the subpoenas, just for the record.

1           MR. CONNOP:  Okay.  Now I know.

2           THE COURT:  You folks go to the conference room

3    and -- now you know, is it --

4           MR. CONNOP:  Yes.  That's all I needed to know.

5    She's identified it here. I'll see what I can do about

6    getting it to her.

7           THE COURT:  Well, you --

8           MS. TIRELLI:  You will.

9           MR. CONNOP:  I will.

10          THE COURT:  Yes, that's a better --

11          MR. CONNOP:  Better answer?

12          THE COURT:  A better answer.

13          MR. CONNOP:  Okay.  Thank you, Your Honor.

14          THE COURT:  Okay.  So now all I need is a

15   scheduling order and we'll go ahead and I'll carry your

16   motion for a 2004 Exam.  It is hopeful that you'll get all

17   the information you will be looking for in the 2004, but if

18   that isn't the case, they'll have an opportunity to address

19   that.

20          MS. TIRELLI:  Thank you.

21          THE COURT:  I know that some of this is redundant.

22   Perhaps a lot of it is.  But there's so much paper in this

23   case that it would be clearer for this court, and any other

24   court, to know this is what you're looking for and this is

25   the response to it.  All right?

26

1           MR. CONNOP:  Thank you, Your Honor.

2           MS. TIRELLI:  Thank you.

3           THE COURT:  Okay.

4           MR. CONNOP:  Could we be excused?

5           THE COURT:  Yes.

6           MS. TIRELLI:  Thank you, Your Honor.

7           THE COURT:  You're welcome.

8        (Proceedings concluded at 2:46 p.m.)

9        I, CHRISTINE FIORE, Certified Electronic Reporter and

10    Transcriber, certify that the foregoing is a correct

11    transcript from the official electronic sound recording of

12    the proceedings in the above-entitled matter.

13

14    *Christine Fiore*

15    _____May 31, 2011

16    Christine Fiore, CERT*D-410

17

18

19

20

21

22

23

24

25